HARRY A. CARLSON, Plaintiff-Appellee, *v.* THE VILLAGE OF WORTH, Defendant-Appellant.

(No. 58299; )

First District (3rd Division)—December 19, 1974.

Staehlin, Jantorni and Sullivan, of Chicago (John M. Sullivan and Philip J. McGuire, of counsel), for appellant.

Peter B. Carey, of Chicago (J. Theodore Meyer, Philip J. Carey, and Paddy Harris McNamara, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendant, Village of Worth, Illinois, appeals from a summary judgment entered on plaintiff's declaratory judgment action which challenged the validity of defendant's ordinance for the licensing and regulation of sanitary landfills. The trial court declared the ordinance to be invalid

and enjoined defendant from attempting to enforce its provisions against plaintiff's sanitary landfill operations. Upon appeal defendant contends:

1) The licensing and regulation of sanitary landfills are the proper subjects of ordinance enactment by a non-home rule municipality under the powers conferred in article 11 of the Illinois Municipal Code (Ill. Rev. Stat. 1971, ch. 24, par. 11—1—1 *et seq.*):

2) The Illinois legislature, with the enactment of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1001 *et seq.*), has not preempted the field with respect to the licensing and regulation of sanitary landfills.

Plaintiff, Harry A. Carlson, is the holder of a legal interest in a tract of land commonly known as the Berg Pit, located within the municipal boundaries of defendant. On June 9, 1971, plaintiff was issued Permit No. 1971-19 by the Illinois Environmental Protection Agency, authorizing the operation of a sanitary landfill at the Berg Pit site. The permit stated that it was issued "subject to the standard conditions set forth * * *." which included the following:

"This permit is granted pursuant to Section 39 of the 'Environmental Protection Act' and the 'Rules and Regulations for Refuse Disposal Sites and Facilities' as authorized therein, and is subject to the following conditions:

* * *

4. This authority * * * (c) does not release the permittee from compliance with other applicable statutes of the State of Illinois, or with applicable local laws, regulations or zoning ordinances."

Defendant, having a population of less than 25,000 is not a home rule unit under article 7, section 6, of the 1970 Illinois Constitution, and has not elected to acquire that status by referendum. As a result, defendant has only those powers which have been delegated to such entities by statute. Ill. Const. (1970), art. 7, § 7.

On June 22, 1971, defendant enacted Ordinance No. 71—5 entitled "Village of Worth, Illinois Solid Waste Disposal Ordinance." The ordinance created permit requirements and regulations for the establishment and operation of sanitary landfills and other waste disposal facilities located within defendant's municipal boundaries. Subsequently, plaintiff filed a complaint for declaratory judgment, attacking the constitutionality of the ordinance and praying that defendant be enjoined from enforcing it against plaintiff's sanitary landfill operations. The challenge to the validity of the ordinance was twofold. In the first count of the complaint

plaintiff alleged that as a non-home-rule unit defendant possessed only those powers expressly granted to it by the legislature, and that there existed no legislative grants empowering defendant to license or regulate sanitary landfills. The second count alleged that the ordinance was invalid because the legislature had preempted the field with the passage of the Surface-Mined Land Conservation and Reclamation Act (Ill. Rev. Stat. 1971, ch. 93, par. 201 *et seq.*) and/or the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1001 *et seq.*).

After a motion to dismiss the complaint was denied, plaintiff moved for summary judgment. On August 4, 1972, the trial court entered summary judgment for plaintiff on both counts which declared defendant's 'ordinance to be unconstitutional, invalid and void. (However, the record reflects that the trial court rejected the argument that the Surface-Mined Land Conservation and Reclamation Act preempted the field of sanitary landfill licensing and regulation, but did accept that argument as applied to the Environmental Protection Act.) The trial court further enjoined defendant from attempting in any manner to interfere with the plaintiff's sanitary landfill operations. Thereafter, this judgment was vacated *sua sponte* for the stated reason that the injunctive granted was broader than that prayed for in the complaint. On August 30, 1972 a subsequent judgment order was entered which again declared the ordinance unconstitutional, invalid and void, but limited the injunctive relief to restraining defendant from attempting to enforce the ordinance against plaintiff's sanitary landfill operations. It is from this second judgment order that defendant brings this appeal.

■■ It will be unnecessary to consider the contention that the Illinois Municipal Code empowered defendant to enact the instant ordinance, as we conclude that the Environmental Protection Act has preempted the field of sanitary landfill licensing and regulation and thereby removed whatever authority defendant did have in that area. Whether a statute has or has not preempted the field so that no new regulation on that subject matter is within the power of a municipality is a question which requires an interpretation of the statute in light of its declared purpose and against the backdrop of prior legislation. (*City of Rockford v. Floyd* (1968), 104 Ill.App.2d 161, 243 N.E.2d 837.) Our conclusion that the doctrine of preemption arises in the instant case is based upon case law and the legislative history of the Environmental Protection Act.

In *O'Connor v. City of Rockford* (1972), 52 Ill.2d 360, 288 N.E.2d 432, the Illinois Supreme Court passed upon the relationship of the Environmental Protection Act to local ordinances. There, the City of Rockford, with the intention of operating a sanitary landfill thereon, had contracted to purchase land situated outside its municipal boundaries. The Illinois

Department of Public Health had issued to the City a permit authorizing such operations. The owners of property adjacent to the proposed landfill sought a declaratory judgment that the City, prior to commencing landfill operations was required to secure county permission under the zoning ordinances of Winnebago County. The trial court's judgment in favor of the landowners was reversed by the appellate court. The supreme court relied for its decision on the Environmental Protection Act which became effective after the appellate court ruling. The opinion contains an excellent synopsis of the applicable provisions of the Act and will be quoted at length herein. The court stated at pages 366-368:

"In 1970 the legislature enacted the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, pars. 1001—1051) which repealed 'An Act to prohibit open garbage dumps or sites' and 'An Act in relation to the registration and regulation of refuse and disposal sites and facilities and making appropriations therefor.' Section 2(b) of this Act (par. 1002(b)) states: 'It is the purpose of this Act, as more specifically described in later sections, to establish a unified, state-wide program * * * to restore, protect and enhance the quality of the environment * * *.' In section 20 (par. 1020) the General Assembly finds 'that excessive quantities of refuse and inefficient and improper methods of refuse disposal result in scenic blight, cause serious hazards to public health and safety, create public nuisances, divert land from more productive uses, depress the value of nearby property, offend the senses, and otherwise interfere with community life and development' and declares: 'It is the purpose of this Title [Title V: Land Pollution and Refuse Disposal] to prevent the pollution or misuse of land, to promote the conservation of natural resources and minimize environmental damage by reducing the difficulty of disposal of wastes and encouraging and effecting the re-cycling and re-use of waste materials, and upgrading waste collection and disposal practices.' Section 22 (par. 1022) provides that the Pollution Control Board established by the Act (par. 1005) may adopt regulations to promote the purposes of Title V and that 'without limiting the generality of this authority, such regulations may among other things prescribe * * * Standards for the location, design, construction, sanitation, operation, maintenance, and discontinuance of the operation of refuse collection and disposal sites and facilities * * *.' Section 21(e) (par. 1021(e)) requires a permit from the Environmental Protection Agency created under the Act (par. 1004) for the location, design, operation and maintenance of a sanitary landfill, and section 39 of the Act (par.

1039) provides that the Agency may, in granting permits, 'impose such conditions as may be necessary to accomplish the purposes of this Act, and as are not inconsistent with the regulations promulgated by the Board hereunder.'

Section 27 (par. 1027) provides that in promulgating regulations 'the Board shall take into account the existing physical conditions, the character of the area involved, including the character of surrounding land uses, zoning classifications, the nature of the existing air quality, or receiving body of water, as the case may be, and the technical feasibility and economic reasonableness of measuring or reducing the particular type of pollution.'

In our opinion, to hold here that the city's use of the proposed site as a landfill may be permitted only upon issuance of a conditional use permit by Winnebago County, or that the county, by reason of its zoning ordinance may prohibit such use, contravenes the clearly expressed legislative intent that such operations be conducted only upon issuance of a permit from the Environmental Protection Agency. By the enactment of the Environmental Control Act, the General Assembly has expressly declared the need for 'a unified state-wide program' and provided the means for issuance of appropriate permits under regulations promulgated after taking into account precisely the conflicting interests shown by this record.

The record shows that the order dissolving the permanent injunction was stayed, no landfill operations have been commenced at the proposed site and no pressing need for the facility is shown which would warrant action which might serve to defeat the clearly stated purposes of the Environmental Protection Act. We conclude therefore, that the judgment of the appellate court should be reversed and the cause remanded to the circuit court of Winnebago County with directions to vacate the order dissolving the permanent injunction and to modify the order issuing the permanent injunction by deleting therefrom the following:

> 'unless and until the existing zoning regulations of the County of Winnebago and State of Illinois have been fully complied with under the applicable county zoning ordinances and state statutes:' and substituting therefor 'unless and until the said defendants shall obtain a permit granted by the Environmental Protection Agency.' "

By its order that the sole criterion for the operation of the sanitary landfill in question was the issuance of a permit from the Environmental Protection Agency the court struck down the power of local public en-

tities to prohibit or indirectly regulate such activities through the vehicle of a zoning ordinance. The court's same reasoning is even more applicable in the case of an ordinance which seeks to license and regulate part of the very subject matter expressly delegated by the Act to the Pollution Control Board and the Environmental Protection Agency. The practical considerations supporting that conclusion come readily to mind. The purposeless duplication of effort, the likely absence of adequate funding, staffing, and expertise on the local level, and the need for regional action and interaction all bespeak the efficacy of instituting a "state-wide program" to combat environmental damage from all sources. Moreover, the implicit holding in the *O'Connor* case that the Environmental Protection Act has preempted the field of sanitary landfill licensing and regulation is in keeping with the legislative history of that Act itself and preceding legislation in the same area.

In 1963, the General Assembly passed "An Act to prohibit open garbage dumps or sites" prohibiting the open dumping of garbage or refuse, as well as the operation of open dumps, but expressly excluding from its provisions sanitary landfills. (Ill. Rev. Stat. 1963, ch. 111½, par. 461 *et seq.*) In 1965, the General Assembly passed "An Act in relation to the registration and regulation of refuse disposal sites and facilities and making an appropriation therefor." (Ill. Rev. Stat. 1965, ch. 111½, par. 471 *et seq.*) By this latter statute the Department of Public Health was authorized to supervise and adopt regulations pertaining to the creation and operation of refuse disposal facilities, and all such facilities were required to be registered with the Department. The statute provided, however, that it was inapplicable in counties which had established their own departments of public health under State law, or to political subdivisions which had been issued certificates of exemption by the Department upon proof that their own programs met the minimum requirements of the statute. Each of these statutes was expressly repealed by the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1050), which, unlike the repealed statutes, contains no reservation of authority empowering local public entities to enact coincidental ordinances licensing or regulating sanitary landfills or any other refuse disposal facilities. The legislative history demonstrates that this omission was intentional.

■■■ The original draft of the Environmental Protection Act was introduced on April 17, 1970, at the 76th General Assembly as House Bill 3788. Both in its original form and as amended, prior to being sent to the Senate for consideration, section 45(b) of the bill provided that a political subdivision could enact and enforce measures for the control, prevention, abatement or punishment of air or water pollution, or any

other environmental damage. This subsection further provided that upon a proper showing to the Pollution Control Board a political subdivision could be certified as the agency with primary responsibility for such matters within its jurisdiction, although the Board and the Environmental Protection Agency would retain their full authority to exercise their respective functions within that certified subdivision. Thus, as sent to the Senate, House Bill 3788 expressly reserved to local public entities the power to enact concurrent legislation concerning those subjects included within its scope. Yet, significantly, the provisions of the Act which were passed into law contain no reservation of local authority whatsoever. (It is also significant that at least one attempt to amend the Act to authorize municipalities to adopt sanitary landfill licensing requirements and regulations coextensive with those promulgated by the Pollution Control Board has been unsuccessful. (See House Bill 256, 78th General Assembly, State of Illinois 1973 and 1974, Legislative Synopsis and Digest, No. 9, March 29, 1973).) It is clear from the Environmental Protection Act itself, its legislative history, and preceding legislation in the same area that the General Assembly intended to thereby exclude any authority of local political entities which could interfere with or frustrate the objective of establishing a unified state-wide system of environmental protection. As a consequence, we hold that the defendant's ordinance for the licensing and regulation of sanitary landfills was stillborn.

Defendant further argues that regardless of the field of sanitary landfill licensing and regulation being preempted, the Environmental Protection Agency, in the exercise of its statutory discretion, has legitimatized defendant's ordinance by conditioning plaintiff's permit upon compliance with applicable state statutes, local laws, regulations and zoning ordinances. The subsection 4(c) "condition" contained in plaintiff's Environmental Protection Agency permit is a restatement of Rule 2.01 of the Department of Public Health's Rules on Refuse Disposal Sites and Facilities which were adopted pursuant to the act regulating refuse disposal sites (Ill. Rev. Stat. 1965, ch. 111½, par. 471 *et seq.*) (repealed effective July 1, 1970). Under the Environmental Protection Act, these rules of the Department of Public Health are continued in force and effect until new rules and regulations are promulgated by the Pollution Control Board. (Ill. Rev. Stat. 1971, ch. 111½, par. 1049.) However, defendant's reliance on the restatement of the rule in plaintiff's permit is unfounded.

■■ In view of the effect of the Environmental Protection Act on local regulatory power, this condition could be considered as merely expressing the obvious, that a permittee is not exempt from observing

local regulations left viable after the passage of the Act. Further, the same condition was contained in the permit issued by the Department of Public Health to the defendant in *O'Connor, supra,* and the supreme court there stated that the rule upon which it was based was apparently adopted by the Department as a result of a misreading of the decision in *Heft v. Zoning Board of Appeals* (1964), 31 Ill.2d 266, 201 N.E.2d 266, 201 N.E.2d 364. Moreover, if the condition were intended to authorize regulatory ordinances such as that enacted by defendant, it would be invalid for two reasons. It would constitute an improper attempt to expand the provisions of the Environmental Protection Act by rule to give local public units authority over areas which the legislature has decreed by the Act that they should not have. (*Ruby Chevrolet Inc., v. Department of Revenue* (1955), 6 Ill.2d 147, 126 N.E.2d 617.) It would also constitute an improper delegation of the discretion that the legislature vested in the Environmental Protection Agency, contravening the legislative intent that the decision on licensing refuse disposal facilities be made by that agency. (*People ex rel. Abner v. Kinney* (1964), 30 Ill.2d 201, 195 N.E.2d 651.) The condition contained in plaintiff's permit cannot operate to validate or ratify a void ordinance.

We hold that defendant's Ordinance No. 71—5, entitled "Village of Worth, Illinois Solid Waste Disposal Ordinance," is void as an attempted trespass into a field previously preempted by the General Assembly. The judgment of the trial court is affirmed.

Affirmed.

McGLOON and STAMOS, JJ., concur.