(No. 47334.—

HARRY A. CARLSON, Appellee, v. THE VILLAGE OF WORTH, Appellant.

*Opinion filed September 26, 1975.—Supplemental opinion filed on denial of rehearing February 5, 1976.*

RYAN and UNDERWOOD, JJ., and WARD, C.J., dissenting.

Staehlin, Jantorni and Sullivan, of Chicago (John M. Sullivan and Philip J. McGuire, of counsel), for appellant.

O'Brien, Trittipo & Carey, Ltd., of Chicago (Peter B. Carey, J. Theodore Meyer and Philip J. Carey, of counsel), for appellee.

Allen S. Lavin, of Chicago (Vincent P. Flood and James B. Murray, of counsel), for *amicus curiae* Metropolitan Sanitary District of Greater Chicago.

Vescelus, Perry & Pollard, of Wheaton (Ralph R. Bouma, Jr., and John P. Martin, of counsel), for *amici curiae* Browning-Ferris Industries of Illinois, Browning-Ferris Industries of Rockford, Inc., Vandermolen Disposal Company, and Bernard Vandermolen Disposal Company.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Edmund Hatfield, Assistant Corporation Counsel, of counsel), for *amicus curiae,* the City of Chicago.

William J. Scott, Attorney General, of Chicago (Marvin Ira Medintz, Assistant Attorney General, of counsel), for *amicus curiae* the Environmental Protection Agency.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

This case concerns the authority of a non-home-rule municipality to superimpose the requirements of its own "environmental protection ordinance" upon the holder of a permit for the operation of a sanitary landfill issued by the State Environmental Protection Agency pursuant to the Environmental Protection Act. On June 9, 1971, the plaintiff, Harry A. Carlson, obtained a permit from the Illinois Environmental Protection Agency which authorized him to install and operate a sanitary landfill within the Village of Worth, a non-home-rule municipality. On June 22, 1971, the Village enacted its ordinance, which made it unlawful to operate a sanitary landfill within the

Village without a permit from the Village. Issuance of such a permit was conditioned upon compliance with the requirements of the "Village of Worth Environmental Protection Ordinance," which included the requirement of compliance with the village zoning ordinance.

The circuit court of Cook County enjoined the enforcement of the ordinance, the Appellate Court, First District, affirmed (25 Ill. App. 3d 315), and we allowed leave to appeal.

The appellate court found it unnecessary to consider what authority, if any, the municipality might have had to regulate a sanitary landfill prior to the enactment of the Environmental Protection Act in 1970, because it concluded that local regulation was preempted by that statute. We agree with that conclusion, which was based upon our opinion in *O'Connor v. City of Rockford* (1972), 52 Ill.2d 360. Although the plaintiff in that case was the City of Rockford, the decision is equally applicable to a private individual or a corporation. In that case the court held:

> "In our opinion, to hold here that the city's use of the proposed site as a landfill may be permitted only upon issuance of a conditional use permit by Winnebago County, or that the county, by reason of its zoning ordinance may prohibit such use, contravenes the clearly expressed legislative intent that such operations be conducted only upon issuance of a permit from the Environmental Protection Agency. By the enactment of the Environmental Control Act, the General Assembly has expressly declared the need for 'a unified state-wide program' and provided the means for issuance of appropriate permits under regulations promulgated after taking into account precisely the conflicting interests shown by this record." 52 Ill.2d 360, 367.

The *O'Connor* case would dispose of the contentions of the Village in the present case were it not for the

following statement in *City of Chicago v. Pollution Control Board* (1975), 59 Ill.2d 484, 489: "We conclude therefore that a local governmental unit may legislate concurrently with the General Assembly on environmental control." The Village's case is based primarily upon that statement. The statement was dictum, for the issue in the *City of Chicago* case was whether or not a sanitary landfill and three incinerators, operated by the City itself, were subject to the provisions of the Environmental Protection Act. No issue relating to the power of a municipality to legislate concerning environmental control was before the court, and certainly it was not intended to overrule the decision of this court in the *O'Connor* case.

The opinion in the *O'Connor* case reviewed the history of legislative efforts to control refuse disposal sites, and that history need not be repeated here. Shortly stated, it indicated that local regulation had proved unsatisfactory. The difficulties encountered resulted in the passage of the Environmental Protection Act, which contains the following legislative finding: "(ii) that because environmental damage does not respect political boundaries, it is necessary to establish a unified state-wide program for environmental protection and to cooperate fully with other States and with the United States in protecting the environment; ***." (Ill. Rev. Stat. 1973, ch. 111½, par. 1002.) And the opinion of the appellate court in the present case pointed out that provisions which would have expressly reserved concurrent authority to local governmental units were deleted prior to passage of the Environmental Protection Act. 25 Ill. App. 3d 315, 322.

Our subsequent opinion in *American Smelting & Refining Co. v. County of Knox* (1974), 60 Ill.2d 133, dealt with a similar problem. In that case, Knox County sought to apply its zoning ordinance to a surface-mining operation for which a permit had been issued by the Department of Mines and Minerals pursuant to the

"Surface-Mined Land Conservation and Reclamation Act."
The court compared that statute with the Environmental
Protection Act and decided that the reasoning of the
*O'Connor* case was applicable, saying:

> "In *O'Connor v. City of Rockford*, 52 Ill.2d
> 360, an attempt was made to prohibit the
> creation of a sanitary landfill in an unincorp-
> orated county area by use of county zoning
> requirements. After review of various provisions
> of the Environmental Protection Act (Ill. Rev.
> Stat. 1971, ch. 111½, par. 1001 *et seq.*) we held
> that the legislature had expressed an intent to
> resolve conflicting interests which could arise in
> such matters by authorizing a sanitary landfill
> when a permit was issued by the Environmental
> Protection Agency. Thus operation of a sanitary
> landfill was not dependent upon the issuance of a
> conditional use permit by the county, nor could
> the county zoning power be used to prohibit the
> operation if a State permit authorized said use."
> 60 Ill.2d 133, 139.

As a subsidiary proposition, the Village contends that
its local ordinance was given vitality by the following
language contained in the permit issued by the State
agency: "This authority *** does not release the permittee
from compliance *** with applicable local laws, regula-
tions or zoning ordinances." This identical contention,
too, was raised and rejected in the *O'Connor* case. The
State permit granted by the Environmental Protection
Agency authorized the operation of a sanitary waste
disposal site upon the property legally described in the
application for the permit. As the appellate court pointed
out in this case, the Environmental Protection Agency has
not been authorized to delegate the responsibility placed
upon it by the General Assembly to decide whether or not
a sanitary landfill should be permitted to operate at a
specified location.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE RYAN, dissenting:

I cannot concur in the majority opinion which overrules a substantial part of the very recent opinion of this court in *City of Chicago v. Pollution Control Board,* 59 Ill.2d 484, and which not only prohibits non-home-rule units of local government from legislating on environmental matters but also casts serious doubt upon the authority of home-rule units to do so. If, as the majority holds, the legislature prior to the 1970 Constitution has by the enactment of the Environmental Protection Act declared environmental matters to be so exclusively of statewide concern as to deprive any local unit authority to act in the field, how can it later be contended under the new constitution that the same matters pertain to the government and affairs of local governmental home-rule units? See Const. 1970, art. VII, sec. 6(a).

Following a rather detailed analysis of the environmental provisions of the 1970 Constitution and after also considering the Environmental Protection Act, we concluded in *City of Chicago* that local governmental units may legislate concurrently with the General Assembly on environmental control. The majority in this case passes off this holding as "dictum." In that case there were several interrelated issues. The City of Chicago had enacted an environmental ordinance and permits had been issued by the City's Department of Environmental Control for the operation of the disposal facilities by the city. The State had argued that the city had no authority to legislate in this field contending that the authority to do so was vested exclusively in the State. We held that it was not. I am not so concerned with whether this holding is dictum as I am with the correctness of the conclusion.

I also do not find that it is impossible to reconcile "the dictum" of *City of Chicago* with the holding in

*O'Connor v. City of Rockford,* 52 Ill.2d 360, a case which I fear has been too broadly read. Both the majority opinion and the appellate court opinion in this case rely on *O'Connor.* However, that case involved only a conflict between a permit issued by the State agency involved and a local zoning ordinance. It was not the import of that case that a unit of local government could not legislate in the field of environmental control. *O'Connor* held only that the county, by reason of its zoning ordinance, could not prohibit the use of the land for a landfill operation which had been authorized by a permit issued by the State agency. We noted in that case that the Pollution Control Board under section 27 of the Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1027) in promulgating regulations pursuant to which the permit is to be issued is required to take into account the existing physical conditions, the character of the area involved, including the character of surrounding land uses and the *zoning classification.* Thus the very conflict that was in issue in *O'Connor* was required to be considered by the State agency issuing the permit before the permit was issued.

In the case before us we are not dealing with a zoning ordinance. Involved in this case, as in *City of Chicago,* is a comprehensive local ordinance 23 pages in length. It covers in detail the use and operation of solid waste disposal sites and sanitary landfills and only incidentally mentions zoning requirements in two brief sentences. The trial court decided this case on a motion for summary judgment. The pleadings, the order of the court, the statements of counsel in the trial court and the comments of the trial judge all indicate that the zoning ordinance of the village is not involved in this case. Thus, we are not concerned with the narrow holding of *O'Connor.* We are concerned with the broader question of whether local governmental units can legislate in the field of environmental protection.

The appellate court and the majority opinion conclude that the General Assembly by the enactment of the

Environmental Protection Act has preempted local regulation. It must be remembered that the Environmental Protection Act was enacted in 1970 prior to the effective date of our Constitution. In *City of Chicago,* we found that it was the intent of the constitutional convention as reflected in the committee reports that if the State legislates in the environmental field, but does not express exclusivity, local governmental units retain the power to act concurrently. If we accept the majority's view that the Environmental Protection Act prohibits local governmental units from legislating in this field then the act is "contrary to, or inconsistent with" the intended import of the environmental provision in the Constitution and contrary to the intent expressed in the convention. Thus under section 9 of the transition schedule of the Constitution, any preemption that may have been implied in the Environmental Protection Act in 1970 did not survive after the effective date of our new Constitution on July 1, 1971.

As observed in *City of Chicago,* section 2(a)(iv) of the Environmental Protection Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1002(a)(iv)) states that the General Assembly finds that it is the obligation of the State government "to encourage and assist local governments to adopt and implement environmental-protection programs consistent with this Act." It is true that this is not a specific grant of authority to a city to legislate in this field but it does express an intent that the State is not to be the sole occupant of the field. The authority of a non-home-rule unit to legislate in this field is found in its police powers. This court stated in *Montgomery v. City of Galva,* 41 Ill.2d 562, at 564: "The right of a municipality under its police power to regulate the collection and disposition of garbage and refuse for the promotion of public health has been recognized in the case law. [Citations.] "

Thus in this case the defendant had the authority to enact the ordinance regardless of the absence of a specific

grant in the Environmental Protection Act. This authority is subject to constitutional limitations as expressed in the constitutional proceedings that local regulation must conform to the minimum standards established by the State. (See *City of Chicago v. Pollution Control Board,* 59 Ill.2d 484, at 488-489.) The ordinance in this case complies with this requirement by specifically providing that where the provisions of the ordinance are either more restrictive or less restrictive than comparable conditions imposed by other provisions of any applicable law, rule or regulation, the more restrictive provisions (those which impose higher standards or requirements) shall govern.

Summarizing, *O'Connor* involved only a conflict between a local zoning ordinance and a permit issued by a State agency and is not relevant to the issues in this case. We are here concerned with a local ordinance regulating the use and operation of solid waste disposal sites. The authority to enact such an ordinance stems from the village's police power exercised for the promotion and protection of public health. The ordinance does not attempt to exclusively occupy the field but provides that its requirements shall conform to the minimum standards established by law or regulation. The intent of the framers of the Constitution was that the State and local governmental units could legislate concurrently on environmental matters. I think the decision of this court in *City of Chicago* is controlling and should be followed.

### Supplemental Opinion On Denial of Rehearing

Several *amicus curiae* briefs have been filed in connection with the petition for rehearing in this case. The new issues raised, as well as the importance of the basic question, have prompted us to file this supplemental opinion.

The Attorney General has filed an *amicus* brief on behalf of the Environmental Protection Agency. This brief concentrates upon two sections of the Act which authorize

the Pollution Control Board to adopt regulations. Section 27 applies generally to all regulations, and provides:

"In promulgating regulations under this Act, the Board shall take into account the existing physical conditions, the character of *** surrounding land uses, zoning classifications, the nature of the existing air quality, ***." (Ill. Rev. Stat. 1973, ch. 111½, par. 1027.)

The other section which the Agency emphasizes is section 22, which relates specifically to refuse disposal, and authorizes the Board to adopt regulations, which among other matters may prescribe:

"(a) Standards for the location, design, construction, sanitation, operation, maintenance, and discontinuance of the operation of refuse collection and disposal sites and facilities; ***." (Ill. Rev. Stat. 1973, ch. 111½, par. 1022.)

It is the position of the Agency that the Pollution Control Board has not adopted any standards "whereby the Environmental Protection Agency can make rational decisions regarding location of sanitary landfills" and that authority to govern their location may therefore be exercised only by local government units.

Several considerations persuade us that this position must be rejected. Rule 316 of the Board's solid waste regulations requires that an application to the Environmental Protection Agency for a development permit for a sanitary landfill contain, among other things, a legal description of the proposed site, maps of the site and of the area within a quarter mile of its boundaries showing the location of waterways, surface drains and "land use and population density of the proposed sanitary landfill site and of the area surrounding the site within one mile of the site boundaries." It thus appears that the Board has complied with its statutory duty.

Moreover, we deal in this case with the issuance of a permit for a sanitary landfill. Such a permit must relate to a specific site. With respect to the issuance of permits the Act provides:

"The Agency shall adopt such procedures as are necessary to carry out its duties under this Section. In granting permits the Agency may impose such conditions as may be necessary to accomplish the purposes of this Act, and as are not inconsistent with the regulations promulgated by the Board hereunder." (Ill. Rev. Stat. 1973, ch. 111½, par. 1039.)

A condition which makes a permit for a sanitary landfill upon a specific parcel of land subject to local zoning ordinances or other locally imposed conditions is not, in our opinion, consistent with the basic purpose of the Act—to "establish a unified, state-wide program supplemented by private remedies" (Ill. Rev. Stat. 1973, ch. 111½, par. 1002(b)).

The agency also argues that it "has no authority to adopt substantive regulations regarding the location of sanitary landfills." But as we have pointed out, a sanitary landfill permit must be issued for a specific site, and the Board's regulations require that the application for a permit contain detailed information concerning surrounding land uses and conditions. The Agency thus has before it the information necessary to enable it to determine the suitability of the location of a proposed sanitary landfill.

An *amicus curiae* brief upon rehearing was also filed on behalf of the City of Chicago. That brief relies upon section 2(a)(iv) of the Act, which provides:

"The General Assembly finds:
\* \* \*

(iv) that it is the obligation of the State Government to manage its own activites so as to minimize environmental damage; *to encourage and assist local governments to adopt and implement environmental-protection programs consistent with this Act;* to promote the development of technology for environmental protection and conservation of natural resources; and in appropriate cases to afford financial assistance in preventing environmental damage." (Italics supplied.)

By concentrating solely upon the italicized clause and disregarding its context, the city is able to perceive a

legislative grant of "concurrent jurisdiction over environmental matters within the municipal boundaries of Chicago, with the State regulations setting the minimum permissible standards." This, in our opinion, is a misreading of the provision, which appears to relate to State assistance in the elimination of pollution problems stemming from the activities of the local governments themselves. In any event the clause is a part of a legislative finding as to the duties of the State. It is not a grant of authority to units of local government. And certainly there is in the italicized words no grant of power to local governments to impose requirements more stringent than those imposed by the State.

The opinion of the appellate court in this case recites the history of earlier legislative efforts to achieve environmental control, and continues:

"The original draft of the Environmental Protection Act was introduced on April 17, 1970, at the 76th General Assembly as House Bill 3788. Both in its original form and as amended, prior to being sent to the Senate for consideration, section 45(b) of the bill provided that a political subdivision could enact and enforce measures for the control, prevention, abatement or punishment of air or water pollution, or any other environmental damage. This subsection further provided that upon a proper showing to the Pollution Control Board a political subdivision could be certified as the agency with primary responsibility for such matters within its jurisdiction, although the Board and the Environmental Protection Agency would retain their full authority to exercise their respective functions within that certified subdivision. Thus, as sent to the Senate, House Bill 3788 expressly reserved to local public entities the power to enact concurrent legislation concerning those subjects included within its scope." (25 Ill. App. 3d at 321-22.)

But the powers thus reserved to local public entities were subsequently eliminated from the Act, and efforts to restore them were defeated. (Senate Journal, 76th General Assembly, May 28, 1970, at 4797-4800, Amend. Nos. 13 and 14.) Both the original provision and the rejected Senate amendments 13 and 14 authorized municipal regulations "at least as stringent as the corresponding provisions of this Act and of regulations thereunder."

The simple fact is that the Act does not contain the grant of municipal authority that the city would like to have it contain. Such a grant of authority was deliberately deleted by the General Assembly, and the General Assembly deliberately refused to put it back. The Environmental Protection Agency has not been authorized to confer upon municipalities the power that the General Assembly refused to give them. We agree with the appellate court's conclusion which states:

> "It is clear from the Environmental Protection Act itself, its legislative history, and preceding legislation in the same area that the General Assembly intended to thereby exclude any authority of local political entities which could interfere with or frustrate the objective of establishing a unified state-wide system of environmental protection." 25 Ill. App. 3d at 322.

MR. JUSTICE RYAN, dissenting:

It is apparent that there are substantial differences between my interpretation of the Environmental Protection Act and that of the majority of this court. These differences prompted my dissent in the original opinion in this case and cause me to disagree with the conclusions stated in the supplemental opinion. The Attorney General of this State and the corporation counsel of the city of Chicago have filed *amicus* briefs in support of the petition for rehearing indicating that these offices also share my

concern for this court's interpretation of the Act, which I consider vests more authority in the Environmental Protection Agency than the legislature intended. The Act is lengthy. It covers broad areas of activities which affect many facets of modern living, industry and business. In very general language it vests certain authority in the Pollution Control Board. In language just as general it vests in the Agency the authority to administer and enforce the Act. The Agency is intimately familiar with all aspects of the Act and the interrelationship between its various provisions. The Attorney General, speaking for the Agency, whose duty it is to administer and enforce the Act, states that this court's interpretation vests in the Agency too much authority; that this court's interpretation creates serious problems in administering the Act. In view of these remonstrations coming from those who have an overall familiarity with the Act, this court, which only has the opportunity to consider the Act in piecemeal fashion on a case-by-case basis, should grant rehearing. In fact, I would favor asking for additional briefs and a reargument of the case so that this court may be fully informed of all ramifications of the question and fully understand the consequences of its decision.

In this dissent I will discuss the area of my disagreement with the supplemental opinion and will not restate my objections to the original opinion. Before stating the substance of my dissent, there is what I consider to be an erroneous assumption in the supplemental opinion which should be considered.

The majority did not accept the representation of the Attorney General that the Board has not adopted any standards regarding location of sanitary landfills and that authority to govern their location may be exercised by local government units. The opinion finds in the requirement of Rule 316 of the Board's solid waste regulations that the application for a permit contain a legal description of the proposed site, maps of the site and land use and

población density of the site and the area within one mile of its boundaries some standard upon which the Agency may issue a permit. Rule 316 has nothing to do with standards. Although other rules of the Board covering this subject do contain standards, there are none relating to location of landfills. Rule 316 only specifies what information should be contained in the application for a development permit for a sanitary landfill. If the Agency uses this information as the supplemental opinion suggests, it would be establishing standards which it has no authority to do under the Act. For example, if the Agency were to decide that to accomplish the purpose of a unified statewide program as stated in section 2(b) of the Act no permit for a sanitary landfill will issue if the map and information submitted pursuant to Rule 316 show a population density of 500 people within the area of one mile from the site's boundary this would be establishing a standard which the Agency has no authority to formulate.

The fact that the Environmental Protection Act does not contain a specific grant of authority to municipalities to regulate sanitary landfill operations does not manifest an intent by the legislature that the State preempt all authority in this field. The supplemental opinion indicates that the failure of the Act to specifically grant to the municipality any authority is evidence that no such authority exists. As stated in my original dissent, municipalities possess authority to legislate in the area involved in this case by virtue of other statutory grants.

In *City of Nokomis v. Sullivan*, 14 Ill.2d 417, this court found that the statute conferring on cities the power to define, prevent and abate nuisances could be used to compel property owners to discontinue the use of water closets and privies not connected to the city sewer. Our statute still provides:

> "The corporate authorities of each municipality may define, prevent, and abate nuisances." Ill. Rev. Stat. 1973, ch. 24, par. 11—60—2.

In *Strub v. Village of Deerfield*, 19 Ill.2d 401, the village, by ordinance, limited the number of scavenger licenses. This court held that the village had the authority to regulate the collection, removal and disposal of garbage either under the general police power conferred on it by statute or under the statute authorizing a municipality "to do all acts and make all regulations necessary or expedient for the promotion of health and the suppression of disease." (19 Ill.2d 401, 402.) This court found that the ordinance limiting the number of scavenger licenses "bears a real and reasonable relation to the objects of public health sought to be attained ***." (19 Ill.2d 401, 405-406.) The present statute has retained the provisions relied upon in *Strub* and provides:

> "The corporate authorities of each municipality may do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of diseases ***." Ill. Rev. Stat. 1973, ch. 24, par. 11—20—5.

In *Consumers Co. v. City of Chicago*, 313 Ill. 408, 413, it was held that the police powers granted to the city "to pass and enforce all necessary police ordinances" gave to municipalities the authority to regulate and provide for the collection and disposition of garbage. This court stated:

> "The right of a municipal corporation, under its police powers, to regulate the collection, removal and disposition of garbage and other noxious and unwholesome substances accumulating within its limits, as a sanitary measure for the promotion of the public health, has been sustained. [Citations.]" (313 Ill. 408, 413.)

See also *Montgomery v. City of Galva*, 41 Ill.2d 562. Our statute still provides:

> "The corporate authorities of each municipality may pass and enforce all necessary police ordinances." Ill. Rev. Stat. 1973, ch. 24, par. 11—1—1.

In addition to the above statutory provisions which

have been construed as granting to municipalities the authority to adopt ordinances similar to that of the Village of Worth, the Illinois Municipal Code also specifically provides:

"Every city, village or incorporated town may provide such method or methods as shall be approved by the corporate authorities for the disposition of garbage, refuse and ashes. Such methods may include, but need not be limited to land fill, feeding of garbage to hogs, incineration, reduction to fertilizer, or otherwise. ***" Ill. Rev. Stat. 1973, ch. 24, par. 11—19—5.

Also, the Illinois Municipal Code confers zoning powers upon municipal authorities "[t]o the end *** that the public health, safety, comfort, morals, and welfare may otherwise be promoted. ***" Ill. Rev. Stat. 1973, ch 24, par. 11—13—1.

Historically the regulation of the collection of refuse and its disposition have been functions performed by municipalities under the authority delegated by the legislature or that necessarily implied by such delegation. Those statutes from which this authority has been derived are still in effect. If it were the intent of the legislature that the Environmental Protection Act place these functions under the exclusive control of the State, such an intent could have been easily clearly expressed in the Act, or the particular sections of the Code conferring that authority on the municipalities could have been amended or repealed. This was not done, and the authority is still vested in the municipalities to be exercised as stated in *City of Chicago v. Pollution Control Board,* 59 Ill.2d 484, in conformity with the minimum standards established by the legislature.

The Village of Worth is a non-home-rule unit. However, the city of Chicago in its *amicus* brief voiced concern as to the effect of this court's holding in this case upon its home rule powers which we sustained in *City of Chicago v. Pollution Control Board.* As noted above, the collection and disposal of garbage and refuse has long been a function

delegated to local governmental units. It would thus appear to be a power or function pertaining to the government and affairs of a home rule unit and thus a home rule power. Also, under the rationale of *Strub v. Village of Deerfield* the provisions of section 6(a) of article VII of the 1970 Constitution giving home rule units "the power to regulate for the protection of the public health, safety, morals and welfare," the regulation of the collection and disposal of garbage would be a home rule function. The State has chosen through the Environmental Protection Act to regulate in this area concurrently with the home rule units; however, it has not specifically limited the concurrent exercise of a home rule unit's authority, nor has it specifically declared the State's exercise of authority in this area to be exclusive, as it may do under section 6(i) of article VII of the 1970 Constitution.

The supplemental opinion and the opinion of the appellate court in this case conclude that the failure of the legislature to enact amendments No. 13 and 14 evidences an intent that municipalities should not be authorized to regulate in the areas covered by the Environmental Protection Act. I cannot read that meaning into the defeat of these amendments. There obviously are many reasons why a bill or an amendment to a bill may be voted down. We do not have the benefit of the transcribed debates on these amendments. It may well be that the General Assembly thought the provisions of the Illinois Municipal Code, several sections of which I have cited, conferred adequate power upon municipalities and that a further grant was not needed in the Act. In reading the two amendments in question there appears to be a very valid reason for their defeat aside from that suggested by the supplemental opinion. The amendments would have completely fragmented the enforcement of the Act by providing for its enforcement in certain cities by the municipality alone and in other areas of the State by a political

subdivision and the Agency or the Board, and in areas where no political subdivision had been certified as the agency with primary responsibility, presumably the amendment would have required enforcement by the Agency or the Board alone.

We are in this case dealing only with the regulation of solid waste disposal sites and sanitary landfills. The sections of the Illinois Municipal Code cited grant to municipalities authority to regulate these operations. The Village of Worth has adopted the ordinance in question pursuant to this statutory authority. There may be areas covered by the Environmental Protection Act in which the Illinois Municipal Code has not authorized municipalities to legislate, thus denying, at least to non-home-rule units, the power to act and leaving that power solely in the State. The area with which we are dealing in this case, however, is not one of these.

MR. JUSTICE UNDERWOOD, also dissenting:

I agree with Mr. Justice Ryan in his discussion relating to the powers of the Environmental Protection Agency. I also agree generally that existing statutes conferring power upon non-home-rule municipalities to legislate upon environmental matters of purely local concern have not been abrogated, and that *O'Connor* has been too broadly read if it is thought to indicate the contrary. I do not interpret the majority opinion here to preclude local legislation by non-home-rule municipalities under existing statutory authority except as that legislation may affect environmental areas of more than purely local concern or is inconsistent with the Environmental Protection Act.

My greater concern with the opinion of the court, however, is the implied overruling of our recent decision in *City of Chicago v. Pollution Control Board*, 59 Ill.2d 484, which became final only last year. It seems to me the inference to be drawn from the majority opinion here is that because *City of Chicago* misinterpreted, as a grant of

authority to municipalities to legislate in the environmental area, certain language in the Environmental Protection Act which was not so intended, and because legislative efforts to expressly delegate that authority were defeated, the State has totally preempted the area of environmental regulation. Whatever their relevance to the authority of non-home-rule units may be, those facts are not relevant in any discussion of preemption of the power of a home rule unit of local government. A home rule unit derives its powers from section 6 of article VII of our 1970 Constitution, and, except as limited by that section, "may exercise any power and perform any function pertaining to its government and affairs." Unless the General Assembly exercises its preemption responsibilities under paragraphs (g) or (h) of section 6, that body's actions or failure to act cannot inhibit the authority of a home rule unit.

Whether a home rule unit has power to enact a given ordinance is, in my judgment, determined by two questions: (1) Does the subject matter pertain to its government and affairs? (2) If so, has that power been limited or denied it by the General Assembly under 6(g) or 6(h)? Those questions are not considered, nor could they properly be, in the court's opinion in this case since the issue here does not involve a home rule municipality.

MR. CHIEF JUSTICE WARD, also dissenting:

I share the concern which Mr. Justices Underwood and Ryan have expressed.

It is remarkable, as Mr. Justice Ryan observes, that the opinion of the majority imposes upon the Environmental Protection Agency an authority which not only the Village but the Agency itself and the Attorney General as well object to and correctly (to me) say the Agency has not been given by the legislature.

I do not have the small confidence that Mr. Justice Underwood appears to have in the survival of our decision in *City of Chicago v. Pollution Control Board*, 59 Ill.2d

426

484, as to the power of home rule units to act concurrently with the State in the environmental regulatory area. It is clear to me, especially from the majority's discussion of the *amicus curiae* brief filed in behalf of the City of Chicago, that the question as to the exclusivity of the State's authority has been settled by this opinion. The view expressed by this court in *City of Chicago* has been, in practical terms, interred, though it seems obvious to me that environmental pollution pertains to a municipality's "government and affairs."