821 F.2d 433
 26 ERC 1033, 17 Envtl. L. Rep. 21,168
 E & E HAULING, INC., a/k/a American Environmental
Construction, Plaintiff- Counter-Defendant-Appellee,
v.
FOREST PRESERVE DISTRICT OF DuPAGE COUNTY, ILLINOIS,
Defendant-Counter- Plaintiff-Appellant.
 No. 86-1425.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 30, 1986.
Decided June 9, 1987.
 
 Richard A. Makarski, Chapman & Cutler, Chicago, Ill., for defendant-counter-plaintiff-appellant.
 Barry Sullivan, Thomas W. McNamara, Michael J. Rovell, Lawrence C. Begun & Robert D. Nachman, Jenner & Block, Chicago, Ill., for plaintiff-counter-defendant-appellee.
 Before CUDAHY, EASTERBROOK and RIPPLE, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 The defendant Forest Preserve District of DuPage County, Illinois (the "District") appeals from the district court's grant of summary judgment for the plaintiff American Environmental Construction Company, formerly known as E & E Hauling, Inc. ("E & E"), 629 F.Supp. 973. The district court found that two ordinances enacted by the District were invalid because they were preempted by the Illinois Environmental Protection Act, Ill.Rev.Stat. ch. 111 1/2, paragraphs 1001-1052 (1985). We affirm in part and vacate and remand in part to allow the district court to consider whether any part of Ordinance Number 85-132 (the "Volume and Origin Ordinance") was authorized by prior agreement between the District and E & E and should therefore be held valid.
 
 I.
 
 2
 E & E is an Illinois corporation in the business of waste disposal. The District is a non-home rule unit of local government. On June 1, 1974, the District and E & E entered into a contract (the "Agreement") whereby E & E contracted to construct a scenic and recreational hill development, using the techniques of sanitary landfill, on land owned by the District. The Agreement provided for an initial term of ten years, with E & E thereafter having successive two-year extension options for a total term not to exceed nineteen years.
 
 
 3
 The Agreement authorized E & E to charge user fees to persons who deposited waste at the sanitary landfill. The fees were based on the volume and density of the materials deposited, and the Agreement specifically stated that the fees were to be maintained at a level competitive with fees charged by comparable sanitary landfills in northeastern Illinois. In addition, the Agreement provided that E & E would pay a specified percentage of the user fees to the District. For the first ten years of the contract, the District was to receive ten percent of the fees; the percentage would thereafter increase by one percent every other year until the contract expired. E & E and the District have, by mutual consent, amended the Agreement at least eight times since 1974 to allow E & E to raise the user fees.
 
 
 4
 Neither the Agreement nor any amendment restricted the amount of waste E & E could accept for deposit in the landfill. The Agreement provided that "[t]he work shall be expeditiously prosecuted by [E & E] so that the scenic and recreational hill development will be completed as quickly as possible." Agreement p 8. In 1978, the District adopted an ordinance prohibiting the dumping of liquid and sludge waste at the landfill site. E & E sued the District. The suit ended in a settlement agreement pursuant to which the District enacted a new ordinance, Ordinance Number 0-667, with E & E's approval, limiting the amount of liquid and sludge waste that E & E could accept for deposit at the landfill.
 
 
 5
 In 1979, the State of Illinois initiated a suit against the District and E & E in connection with the operation of the landfill. In settling this litigation, the District agreed, among other things, to use part of its share of the user fees to establish a two million dollar environmental reponsibility fund from which it would pay future legal liabilities arising from the landfill.
 
 
 6
 In April 1985, E & E again submitted to the District a request to increase the user fees in order to keep them competitive as required by the Agreement. On July 30, 1985, the District enacted three ordinances. The first, Ordinance Number 85-130, granted the rate increases requested by E & E and found that the new rates were competitive with those charged by other landfills in the area. The remaining two ordinances were enacted without E & E's consent, and they are the heart of the present controversy between the parties. Ordinance Number 85-131 (the "Compensation Ordinance") requires E & E to pay to the District sixty percent of the user fees collected above the fees that were charged prior to the increase granted by Ordinance Number 85-130. The increased revenues were to create a fund to pay for possible future environmental problems at the landfill and at a neighboring landfill. The third ordinance, Ordinance Number 85-132 (the "Volume and Origin Ordinance"), limits the maximum volume of waste E & E may accept in a twelve-month period and requires E & E to give preference to waste generated in DuPage County.
 
 
 7
 E & E filed this suit against the District alleging that the Compensation Ordinance and the Volume and Origin Ordinance: (1) impair the Agreement in violation of the Contract Clause of the United States and Illinois Constitutions, U.S. Const. art. I, Sec. 10, cl. 1, Ill. Const. art. I, Sec. 16; (2) are preempted by the Illinois Environmental Protection Act (the "IEPA"), Ill.Rev.Stat. ch. 111 1/2, paragraphs 1001-1052 (1985); (3) are beyond the powers of the District to enact; and (4) constitute a breach of the Agreement by the District. Subsequently, E & E moved for summary judgment on all but its breach-of-contract claim. The district court granted summary judgment for E & E and found that the ordinances were invalid on the ground that they were preempted by the IEPA. The court further found that its disposition of the preemption claim mooted E & E's contract clause and ultra vires claims, and carried with it a dismissal with prejudice of the District's counterclaim for a declaratory judgment that the ordinances are valid and enforceable. Finally, the court dismissed without prejudice E & E's pendent breach-of-contract claim as well as the District's state law counterclaims.[1] E & E Hauling, Inc. v. Forest Preserve District, 629 F.Supp. 973 (N.D.Ill.1986).
 
 II.
 
 8
 Before we review the district court's finding that the ordinances were invalid, we will briefly address the District's contention that the district court should have abstained from deciding the state law claims and instead should have decided the federal contract clause claim. The District did not argue in favor of abstention before the district court; the court addressed that possibility sua sponte and decided that abstaining would be inappropriate.
 
 
 9
 The district court acted properly in reaching the state law preemption claim. Courts should decide federal constitutional claims only when there is no other basis for deciding the case. See, e.g., Jean v. Nelson, 472 U.S. 846, 854, 105 S.Ct. 2992, 2997, 86 L.Ed.2d 664 (1985); Hagans v. Lavine, 415 U.S. 528, 546-47, 94 S.Ct. 1372, 1383-84, 39 L.Ed.2d 577 (1974); Siler v. Louisville & Nashville R.R. Co., 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909); National Advertising Co. v. City of Rolling Meadows, 789 F.2d 571, 574 (7th Cir.1986).
 
 
 10
 Further, the doctrine of abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188, 79 S.Ct. 1060, 1062, 3 L.Ed.2d 1163 (1959), quoted in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). The present case does not fit within either of the abstention doctrines cited by the District. Pullman abstention, derived from Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), is applicable where a federal constitutional issue might be mooted or presented in a different posture if a pertinent state law issue which is currently undecided were to be resolved in a particular way. See Colorado River, 424 U.S. at 814, 96 S.Ct. at 1244. Abstention may also be appropriate where the case presents a difficult, undecided question of state law involving "policy problems of substantial public import whose importance transcends the result in the case then at bar." Id. at 814-15, 96 S.Ct. at 1244-45; see also Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). We need not address further the intricacies of these types of abstention. Abstention clearly is not appropriate here because the state law question presented is not an unsettled issue. The Illinois state courts, including the Supreme Court of Illinois, have definitively decided the extent to which state law has preempted the field of environmental regulation by non-home rule units.
 
 III.
 
 11
 The Supreme Court of Illinois first addressed the power of a non-home rule local governmental unit to subject a sanitary landfill to local zoning ordinances in O'Connor v. City of Rockford, 52 Ill.2d 360, 288 N.E.2d 432 (1972). The court found that "[b]y the enactment of the Environmental Control Act, the General Assembly has expressly declared the need for 'a unified state-wide program.' " Id. at 367, 288 N.E.2d at 436. The court therefore held that a county could not impose its local zoning requirements on a landfill. Allowing a county to impose conditions above those required by the IEPA would "contravene[ ] the clearly expressed legislative intent that such operations be conducted only upon issuance of a permit from the Environmental Protection Agency." Id.
 
 
 12
 In Carlson v. Village of Worth, 62 Ill.2d 406, 343 N.E.2d 493 (1975), the Supreme Court of Illinois was again confronted with an attempt by a non-home rule unit to impose additional requirements on a sanitary landfill that had already been granted a permit pursuant to the IEPA. The Village of Worth had enacted an ordinance that required sanitary landfill operators to obtain a permit from the village and conditioned the issuance of a permit on compliance with the village's environmental protection and zoning ordinances. The court, relying on its opinion in O'Connor, 52 Ill.2d 360, 288 N.E.2d 432, held that the local regulation was preempted by the IEPA. The court reaffirmed its finding of preemption in a supplemental opinion on denial of rehearing. 62 Ill.2d at 414, 343 N.E.2d at 498.
 
 
 13
 In County of Cook v. John Sexton Contractors Co., 75 Ill.2d 494, 27 Ill.Dec. 489, 389 N.E.2d 553 (1979), the Supreme Court of Illinois stated: "After O'Connor and Carlson, it is clear that the [IEPA] operates to exclude non-home-rule units from the regulation of sanitary landfills." 75 Ill.2d at 507, 27 Ill.Dec. at 492, 389 N.E.2d at 556; see also County of Kendall v. Avery Gravel Co., 101 Ill.2d 428, 79 Ill.Dec. 169, 463 N.E.2d 723 (1984) (reaffirming O'Connor and Carlson ). The court in John Sexton expressly limited its prior holdings of preemption by the IEPA to non-home rule units and held that home rule units could regulate in the area of environmental protection as long as such regulation conformed with the uniform standards established by the state legislature. Thus, under well-established Illinois law, the District, which is a non-home rule unit of government, is clearly preempted by the IEPA from regulating sanitary landfills.
 
 
 14
 The District argues that the line of cases beginning with O'Connor wrongly interpreted the legislature's intent in adopting the IEPA; in support of this position, the District cites legislation enacted subsequent to the IEPA. In particular, the District points to section 39.2 of the IEPA, enacted in 1981, which requires that a landfill site location be approved, according to six specified criteria, by the governing board of the county or municipality in which the site is located. The District also relies on the 1986 enactment of Ill.Rev.Stat. ch. 96 1/2 paragraphs 6340a, 6340b, which authorizes certain forest preserve districts to maintain a "landfill expense fund" to pay for costs arising out of the operation and closure of a sanitary landfill or regional pollution control facility. The District expressly states that it is not alleging that either piece of legislation authorized the District to enact the ordinances in question; the District offers the legislation only as evidence of the legislature's prior intent at the time it enacted the IEPA. District's Reply Brief at 5-6.
 
 
 15
 We do not agree with the District's interpretation of the significance of the legislature's actions. The fact that the legislature on two occasions chose to confer upon local governmental units the authority to participate in very specific ways in the state's unified scheme of environmental protection is not persuasive evidence that the legislature in enacting the IEPA more than a decade earlier intended to allow non-home rule units to regulate sanitary landfills. This evidence alone certainly does not justify a rejection by this court of the consistent interpretation given the IEPA by the Supreme Court of Illinois.
 
 
 16
 The District argues that the doctrine of preemption is not applicable in this case because the District was acting as a "market participant," and not as a "regulator" in enacting the ordinances. According to the District, a municipality that is merely acting as any participant in the market could act is immune from the preemptive effect of state law. The District cites for support two lines of federal court decisions; the first involves the preemptive effect of the Noise Control Act, 42 U.S.C. Sec. 4901 et seq. (1982); see City of Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973); National Aviation v. City of Hayward, 418 F.Supp. 417 (N.D.Cal.1976); Air Transp. Ass'n v. Crotti, 389 F.Supp. 58 (N.D.Cal.1975); and the second involves a market participant exception to Commerce Clause restrictions, see White v. Massachusetts Council of Constr. Employers, Inc., 460 U.S. 204, 103 S.Ct. 1042, 75 L.Ed.2d 1 (1983); Reeves, Inc. v. Stake, 447 U.S. 429, 100 S.Ct. 2271, 65 L.Ed.2d 244 (1980); Hughes v. Alexandria Scrap Corp., 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976).
 
 
 17
 We note first that the District admits that no Illinois court has ever adopted a market participant exception to the doctrine of preemption. We need not speculate about the likelihood that the Supreme Court of Illinois would recognize such an exception, or about the applicability of the cases cited by the District to the present case, because here the District acted as a regulator and not as a market participant. The Agreement between the District and E & E sets forth the price terms and operating conditions that were to govern E & E's operation of the sanitary landfill. In negotiating the Agreement, the District, as owner of the landfill, was free to negotiate about these terms (subject, of course, to constraints imposed by the IEPA). The District, however, acting in its role as a market participant, is not free to impose subsequent conditions on the operation of the landfill that are not authorized by the Agreement without first obtaining the approval of E & E. To the extent that the District has the right to impose additional conditions unilaterally through the enactment of ordinances, as it attempted to do here, the District must derive that power from its governmental authority and is therefore acting as a regulator.
 
 
 18
 The District clearly did not have the authority under the Agreement to demand of E & E an increased percentage of its fees with which to create a fund to pay for future environmental problems. We therefore affirm the district court's finding that the Compensation Ordinance is invalid.
 
 
 19
 Similarly, the Volume and Origin Ordinance is invalid to the extent that it imposes conditions on the operation of the landfill that were not authorized by prior agreement between the District and E & E. The District argues, however, that E & E did agree to allow the District to impose the conditions in the Volume and Origin Ordinance. The district court did not analyze which parts, if any, of the Volume and Origin Ordinance were authorized by prior agreement. We therefore remand to the district court to determine if any part of the Volume and Origin Ordinance should be upheld on the basis of earlier agreement.
 
 
 20
 The District points to paragraph 5.3.2 of the Agreement as authorizing the District to impose restrictions on the use of the landfill as long as the restrictions are in writing. Paragraph 5.3.2 provides as follows:
 
 
 21
 5.3.2 Nondiscrimination. No user of the landfill shall be denied use of the Premises for any acceptable disposal of waste except for the non-payment of user fees, violation of the rules and regulations, or such other reason as may be approved by the DISTRICT in writing. All waste brought into and disposed of on the Premises by the COMPANY shall be charged the same rate as is applicable to other users. The COMPANY shall not discriminate against other users for competitive reasons.
 
 
 22
 Agreement p 5.3.2. Although this provision does not appear to us to give the District the broad powers it claims to enact restrictions such as those in the Volume and Origin Ordinance, we instruct the district court to construe the meaning of this provision on remand.
 
 
 23
 We find more persuasive the District's argument that it had the power to enact that portion of the Volume and Origin Ordinance that restricted the amount of liquid waste to be deposited at the sanitary landfill. In 1981, the District enacted Ordinance Number O-667 with the consent of E & E, which in part seems to give the District the power to determine the maximum volume of certain wastes that can be deposited at the landfill. Paragraph 4(I) of that ordinance provides:
 
 Sole Determination by District
 
 24
 The volume of liquids, septic tank pumpings, sludges and slurries permitted at the Mallard Lake landfill shall be solely determined by the District.
 
 
 25
 Ordinance No. 0-667, at 7. The Volume and Origin Ordinance, in addition to limiting the overall amount of all wastes that could be deposited, set a limit for "special wastes," a term that was defined to include "liquids, septic tank pumpings, sludges or slurries." Ordinance No. 85-132, at 10. This provision limiting "special wastes" seems to be within the power given to the District by Ordinance O-667. We will leave it, however, to the district court to make a determination as to whether any part of the Volume and Origin Ordinance is valid on the basis of prior agreements. For the reasons discussed above, the judgment of the district court is
 
 
 26
 AFFIRMED IN PART AND VACATED AND REMANDED IN PART.
 
 
 
 [1]
 We affirm the district court's dismissal without prejudice of the state law claim and counterclaims as a proper exercise of its discretion. See United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)