THE COUNTY OF LAKE, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Second District   No. 83—3

Opinion filed December 12, 1983.

Fred L. Foreman, State's Attorney, of Waukegan (Gary Neddenreip and Gerald P. Callaghan, Assistant State's Attorneys, of counsel), for petitioner.

Neil F. Hartigan, Attorney General, and Mohan, Alewelt & Prillaman, of Springfield (William J. Barzano, Jr., Assistant Attorney General, of counsel), for respondents.

JUSTICE UNVERZAGT delivered the opinion of the court:

Browning-Ferris Industries of Illinois, Inc. (B.F.I.), petitioned for review of site location approval conditions for a regional pollution control facility with the Pollution Control Board (PCB), pursuant to section 40.1 of the Environmental Protection Act (Act) (Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1040.1). B.F.I. sought review by the PCB of 16 of 25 conditions imposed on its sanitary landfill by the Lake County Board (County Board) pursuant to section 39.1 of the Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1039.1, amended to Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1039.2). The Environmental Protection Agency (Agency) intervened in support of B.F.I. before the PCB.

The PCB's order partially or completely struck 14 conditions,

amended one and affirmed another. The County Board appealed here for a direct review of the PCB's order.

B.F.I. owns and operates a 74.3-acre solid waste disposal site known as Site No. 2 in an unincorporated area of Lake County, Illinois. The site is located approximately 2,000 feet east of the northeast corner of Ninth Street and Green Bay Road, near the village of Winthrop Harbor and the city of Zion. B.F.I. received its operational permit for Site No. 2 from the Agency on December 23, 1981. Under the permit, Site No. 2 was allowed to "handle general municipal solid waste excluding all liquids, sludges and hazardous waste."

Adjacent to Site No. 2 on its western border lies Site No. 1. Site No. 1 is also owned and operated by B.F.I. It is a 71-acre landfill which is permitted as a landfill for special and hazardous waste. Site No. 1 and Site No. 2 are separated by 10 feet of clay.

B.F.I. decided to expand Site No. 2 by adding special wastes, as defined by the Act to the landfill. (Ill. Rev. Stat. 1981, ch. 111½, par. 1003(aa), amended to Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1003(ff).) Although hazardous wastes are included within the definition for special waste, B.F.I. specifically deleted hazardous waste from its request and sought to add only special, nonhazardous waste.

Since the time that B.F.I. initially received the site approval for Site No. 2 from the Agency, the General Assembly passed Senate Bill 172 (also known as Public Act 82—682), effective November 12, 1981, amending the Environmental Protection Act (Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1039.2), to transfer the responsibility for hearing and approving site location suitability permits for regional pollution control facilities from the EPA to the relevant locality, in this case, the County Board. The statute requires the County Board to conduct a public hearing on the site location application and conditions approval of the application on proof that the proposed site meets certain statutory criteria. The statute also enables interested parties to obtain review of the County Board decision before the PCB. Ill. Rev. Stat., 1982 Supp., ch. 111½, pars. 1039.2, 1040.1.

Although Site No. 2 was an existing regional pollution control facility at the time Senate Bill 172 became law, B.F.I. was required to follow the new procedures. The amendments provided for county board approval for a new regional pollution control facility which has as one definition: "a permitted regional pollution control facility requesting approval to store, dispose of, transfer or incinerate, for the first time, any special or hazardous waste." (Ill. Rev. Stat. 1981, ch. 111½, par. 1003(t), amended to Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1003(x).) B.F.I. was seeking permission to add special

nonhazardous waste for the first time to Site No. 2, which meant that B.F.I. had to obtain approval from the County Board before the Agency would grant a permit. In accordance with the new provisions of the Act, B.F.I. filed its request for site location approval with the County Board.

A Lake County Regional Pollution Control Hearing Committee (Committee) was appointed pursuant to a County Board resolution. The Committee conducted public hearings on B.F.I.'s request for site location.

The County Board was required to approve the site location suitability for Site No. 2 only in accordance with the six criteria set out in section 39.2(a). The section provides:

"(a) The county board of the county or the governing body of the municipality *** shall approve the site location suitability for such new regional pollution control facility only in accordance with the following criteria:

(i) the facility is necessary to accommodate the waste needs of the area it is intended to serve;

(ii) the facility is so designed, located and proposed to be operated that the public health, safety and welfare will be protected;

(iii) the facility is located so as to minimize incompatibility with the character of the surrounding area and to minimize the effect on the value of the surrounding property;

(iv) the facility is located outside the boundary of the 100 year flood plain as determined by the Illinois Department of Transportation, or the site is flood-proofed to meet the standards and requirements of the Illinois Department of Transportation and is approved by that Department;

(v) the plan of operations for the facility is designed to minimize the danger to the surrounding area from fire, spills, or other operational accidents; and

(vi) the traffic patterns to or from the facility are so designed as to minimize the impact on existing traffic flows." Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1039.2(a).

Following the hearings, the Committee presented its findings to the County Board in a written report. The Committee found that four of the six criteria of section 39.2 were satisfied by B.F.I. They were those found in subparagraphs (i), (iii), (iv), and (vi). However, in order to meet the criteria of subparagraphs (ii) and (v), certain conditions were imposed on B.F.I. The Committee stated:

"That provided the following provisions are followed by the

applicant, introduction of special waste to the site will not be detrimental to the public health, safety, and welfare, and there will be no increase in the danger to the surrounding area from fire, spills, or other operational accidents."

The report went on to list 25 conditions, lettered A(i-x) through X, and an unnumbered proviso (Proviso).

The County Board adopted the Committee report in a resolution which granted approval to B.F.I. for the introduction of special, non-hazardous wastes to Site No. 2. The resolution stated "that subject to all such conditions the County Board grants its' approval ***" and attached the Committee report to its resolution.

B.F.I. filed a petition for review of site location approval conditions with the PCB. The petition asked the PCB to delete 16 of the conditions that were contained in the County Board's approval resolution. The objected to conditions are:

"C. That the Lake County Health Department shall have the right to conduct unannounced inspections and investigations on site at all reasonable times for the purpose of ensuring that the public health, safety and welfare will be protected.

E. That the Lake County Health Department shall have the right to inspect manifests on all incoming wastes and to sample those wastes as may be necessary to ensure that all special wastes received at the site are permitted and disposed of as designated.

G. That the Lake County Health Department shall have the right to discuss specific disposal methods with the Landfill Supervisor and make recommendations as may be necessary to control any nuisances associated with the disposal of special wastes.

H. That the Lake County Health Department and the Lake County Department of Building and Zoning shall have the right to discuss with the Landfill Supervisor and may require additional measures for controlling: rodent infestation, flies, birds, dust, odors, blowing and erosion problems.

I. That the Lake County Health Department shall receive from applicant copies of all quarterly monitoring well results. In addition, the Lake County Health Department shall have the right to discuss with the applicant and may require additional monitoring reports, wells and/or devices for local ground water, surface water and air.

K. That the applicant shall provide on-site at all times special wastes are received a chemist who shall have a bachelor of

science degree in chemistry and at least two years experience in the field of chemical analysis. Said chemist shall test the contents of wastes brought to the site to ensure that the contents of each load are consistent with manifest forms and that only permitted wastes are deposited on the site. Said chemist shall certify on each manifest form the contents of each load and the site where such contents are deposited.

The minimum tests to be run on site shall be as follows: color, turbidity, smell, Ph, flash point. The Lake County Health Department shall have the right to discuss adequacy of testing with the applicant and may require additional tests to be routinely performed. Special testing may be required at off site labs at the direction of the Lake County Health Department.

M. That the applicant shall meet the water quality goal of the 208 Areawide Water Quality Management Plan for northeastern Illinois by reducing by 50 percent pollution loads in the stormwater runoff.

N. That the applicant shall notify the Lake County Health Department prior to the commencement of any pumping of water off-site; the Health Department shall have the right to test said water for pollutants before pumping begins.

O. That the applicant shall contact the Lake County Health Department whenever the liquid to waste ratio on any given day reaches a level of 10 gallons of liquid to one cubic yard of solid. If the inspection demonstrates problems, the Lake County Health Department may close the site to any additional liquids. Also, daily logs shall be sent to the Lake County Health Department on a monthly basis for its review, to insure compliance with this condition.

P. That if the drainage plan indicates that stormwater will be diverted from Lake Michigan watershed, the applicant shall obtain the necessary state permits for such a diversion.

S. That the applicant, after receiving the approval of property owners, shall test the water from all drinking wells within 500 feet of the site on a quarterly basis and report results to the Lake County Health Department.

T. That the applicant shall sound the gas vents on a quarterly basis in order to determine the level of liquid in the landfill's excavated trench. This should be done during the operation of the facility and for three years after closing of the site. If the level reaches ten feet, then the operator shall begin weekly monitoring. A lowering of the level through pumping

and treatment shall be required if water levels continue to rise.

V. That, upon receiving a special waste permit for the site from the Illinois Environmental Protection Agency, the applicant shall pay a fee of $1,000 per year to the Lake County Health Department to cover the costs of said Department's inspection program as set forth herein; said fee shall be adjusted each year to cover actual cost as determined by said Health Department.

W. That prior to accepting special wastes at the site, the applicant shall provide proof of financial responsibility to the County of Lake in the form of a pre-paid bond, escrow fund agreement, or a pre-paid insurance policy to provide funds for environmental clean-up to correct existing and prevent further environmental damage caused by special wastes leaving the site. Said bond, escrow agreement or insurance policy shall be in an amount not less than $3,000,000.00 for a period of not less than 20 years after closure of the site and shall provide for payment to a person authorized by the County of Lake to determine and execute the remedies necessary to correct existing and prevent further environmental damage caused by special wastes leaving the site.

X. That the foregoing conditions shall become conditions of any permits issued by the Illinois Environmental Protection Agency and shall be enforced by the Illinois Environmental Protection Agency."

Proviso

"It is therefore the recommendation of the Lake County Regional Pollution Control Hearing Committee that the request of the applicant for site approval be granted subject to the foregoing conditions provided, however, that all court reporter fees, costs of transcription of record, and publication costs in connection with said hearing be paid by the applicant."

The Agency filed a motion to intervene before the PCB, which was granted. The primary emphasis of the Agency's position before the PCB, and in this appeal, concerns only Condition X.

The PCB made its determination regarding each of the 16 conditions as briefly summarized:

CONDITION X:

The County Board lacked the authority under section 39.2 to interject itself into the Agency permitting and enforcement system by requiring that its site approval conditions be included in an Agency

permit and enforced thereby. The condition was stricken.

CONDITIONS E, K, O, T AND I:

The common reason for striking these conditions was because they involved technical subject areas which historically are within the province of the Agency. Condition I was affirmed in part since B.F.I. did not challenge the requirement found in the first sentence, *i.e.*, that B.F.I. provide the Lake County Health Department with copies of all quarterly monitoring well results.

CONDITION C:

Senate Bill 172 did not give the Lake County Health Department independent authority for investigation of Site No. 2. The health department already has power to investigate under other statutes so that "C" is merely a restatement of existing law. It was deleted by the PCB.

Condition G was affirmed by the PCB. While Condition H was also found to be within the sphere of county interest, the words "may require" were changed to "to recommend." This change was to insure that there would be no conflict with permit conditions.

CONDITIONS M, N, AND P:

Although drainage conditions were found to be within the sphere of local interests by the Board, Condition M was beyond the scope of section 39.2. That part of "N" requiring notification before pumping water off-site was affirmed. The remainder was stricken because it invaded an area within the Agency's purview. "P" was stricken as superfluous.

CONDITION S:

This condition was deleted because it was too vague and there was no support in the record for a 500-foot limit.

CONDITIONS V, W, and the PROVISO:

All three conditions were stricken by the Board. Section 39.2 does not authorize the County Board to assess costs or impose financial responsibility. There is no basis in the record for the amount of financial responsibility and the time period imposed in "W." Besides, the Agency cannot require a bond (this prohibition is modified as it relates to hazardous wastes), and the County Board cannot do what the Agency is prohibited from doing.

A petition for review by this court of the PCB's order was filed

by the County Board pursuant to Supreme Court Rule 335 and section 41 of the Environmental Protection Act. (87 Ill. 2d R. 335; Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1041.) The County Board has appealed the PCB's decision on only 10 of the conditions: C, E, I, H, K, O, N, V, W and X.

The issues presented for review are:

(1) Whether section 39.2 gives the County Board the power to impose technical conditions on site location suitability approval.

(2) Whether the County Board can require as a condition to site location suitability approval that the Agency issue a permit which incorporates the County Board's site approval conditions and requires enforcement of those conditions by the Agency.

(3) Whether the conditions the County Board sought to impose on site location suitability approval were properly stricken by the PCB.

(4) If the conditions are found to be invalid by this court, does the County Board's resolution constitute a denial of site location suitability approval.

The PCB determined that the County Board did not have the authority under section 39.2 to impose technical conditions on siting approval. This finding was based on its interpretation of the legislative intent behind section 39.2 and the concept of a unified, statewide program of environmental protection. It determined the Agency retained its jurisdiction over the technical aspects of landfill design, construction and operation. It found that section 39.2 allowed the County Board to review matters which were traditionally local in nature. The PCB delineated "spheres of interest" between the Agency and local authorities.

On appeal, the County Board asserts it has exercised only the authority granted it under section 39.2. That section allows the County Board to regulate by permitting the County Board to impose conditions in siting approval. As long as those conditions are in keeping with the six statutory criteria, including conditions which relate to the design and operation of a landfill, the County Board claims it is within its authority. The County Board arrives at this conclusion by arguing that section 39.2 is clear and unambiguous and, therefore, legislative history does not have to be considered.

B.F.I. claims that section 39.2 changed prior law only to the extent that the County Board can approve *location*. It attempts to validate this conclusion by arguing legislative intent; a comparison of sec-

tion 39.2 with sections 39(a), 41(b), and 36(a) (Ill. Rev. Stat., 1982 Supp., ch. 111½, pars. 1039.2, 1039(a), 1041(b); Ill. Rev. Stat. 1981, ch. 111½, par. 1036(a)); the general purpose of the Act for a unified, statewide program; prior decisions of the Board; and a lack of relevance between the conditions and the siting approval.

While the PCB referred to E, K, O, T, and I as the "impermissible 'technical' conditions," the County Board has sought review on only E, K, O and the second sentence of I (which was stricken). B.F.I. contends that Conditions C, H and the second phrase of N (also stricken) are technical conditions. The issue was recently decided in *City of East Peoria v. Pollution Control Board* (1983), 117 Ill. App. 3d 673.

There, the Tazewell County Board denied siting approval to Waste Management for expansion of a landfill. Upon review before the PCB, it was determined that the denial was based upon a finding by the Tazewell County Board that the proposed design, location and operation of the landfill would not protect the public health, safety and welfare. The PCB ruled that the county board could not address "highly technical issues" in this area and had acted beyond its authority. After concluding that the county board went beyond section 39.2, the PCB conducted its own *de novo* consideration of the "highly technical details." The PCB overruled the county board and granted approval for the site.

On appeal, it was determined that the county board had the jurisdiction to consider the public health ramifications of the landfill's design. This authority was granted by virtue of the unambiguous language of section 39.2(a). Since the PCB incorrectly interpreted the law, it incorrectly applied the wrong standard of review by conducting a *de novo* hearing. The PCB's finding was thus invalid. The appellate court remanded the cause to the Board for consideration under the proper standard since the invalid order was not subject to administrative review. The court stated that section 39.2(a)(ii) was an "unequivocal statutory directive to consider the public health ramifications of the proposed landfill's design ***." The PCB's position was found to be inconsistent with the "express, unambiguous language of the statute." 117 Ill. App. 3d 673, 678.

■ The statute provides that siting approval can be granted only in accordance with the six criteria. The criteria include:

> "(ii) the facility is so *designed, located* and *proposed to be operated* that the public health, safety and welfare will be protected;
> * * *

(v) the *plan of operations* for the facility is *designed* to minimize the danger to the surrounding area from fire, spills, or other operational accidents; \*\*\*." (Emphasis added.) (Ill. Rev. Stat., 1982 Supp., ch. 111½, pars. 1039.2(a)(ii), (v).)

The language provides that local governmental units can take into consideration the technical details relating to design and operation of a landfill. Conditions can be imposed "to accomplish the purposes" of section 39.2 which means that local authorities can impose "technical" conditions on siting approval. (Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1039.2(e).) We see no reason to depart from the decision in the *City of East Peoria* case and will adhere to it.

Therefore, as to Conditions C, E, H, K, and O, and the second sentence of both I and N, we remand them to the PCB for review of the County Board's findings and conclusions.

The PCB struck Condition X, which required that the Agency adopt the County Board's conditions in a permit and enforce those conditions. It based this decision on a finding that the County Board did not have the authority under section 39.2 to interject itself into the Agency permitting and enforcement system.

The County Board contends that Condition X is not an attempt to issue a permit. There is no usurpation of Agency permitting authority. The County Board claims that Condition X is the means by which it can enforce its conditions; without it, the County Board's conditions are an "exercise in futility." By requiring that the Agency adopt and enforce the conditions, the concept of a unified, statewide program of environmental control is promoted. The County Board also points out that the Agency permitting authority derives from the county siting approval.

Although B.F.I. argues against the imposition of Condition X, the strongest opponent of the condition is the Agency. It provided the PCB with sufficient reasons to strike the condition when it intervened in the matter. On appeal, we believe its arguments are persuasive and are adopted by this court.

Historically, the Agency has the exclusive authority to issue a permit. The PCB is not vested with this power. (*Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541.) The PCB may not require the Agency to adopt procedures or impose procedures on it for the issuance or transfer of permits. (*Village of Hillside v. John Sexton Sand & Gravel Corp.* (1982), 105 Ill. App. 3d 533.) Nor can the Agency issue a permit subject to local laws and zoning ordinances of non-home-rule governmental units. (*Carlson v. Village of Worth* (1975), 62 Ill. 2d 406.) Of course, recent legislation has modified

*Carlson* so that local authorities have a voice in site location suitability approval. Ill. Rev. Stat., 1982 Supp., ch. 111½, pars. 1039(c), 1039.2.

The language of section 39.2 does not vest the County Board with permitting authority. Any conditions the County Board imposes are not to be "inconsistent with regulations promulgated by the Board." (Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1039.2(e).) Since the PCB is not empowered to act in the permitting process (*Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541; *Village of Hillside v. John Sexton Sand & Gravel Corp.* (1982), 105 Ill. App. 3d 533), the County Board is also so limited. The County Board cannot attempt to do what the PCB cannot.

Also, the County Board is limited to imposing conditions which "accomplish the purposes of this Section," referring to section 39.2. (Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1039.2(e).) The Agency has broader authority to impose permit conditions which are "necessary to accomplish the purposes of this Act," referring to the Environmental Protection Act. (Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1039(a).) When read together, the sections suggest that the Agency maintains its authority to issue permits. The scope of authority granted the County Board is restricted.

Condition X would also require enforcement of the conditions by the Agency. The financial and technical burdens imposed upon the Agency as a result would be great. The imposition of Condition X is an attempt by the County Board to issue a permit. By requiring the Agency to adopt and enforce its conditions, the County Board has usurped the exclusive power of the Agency to grant or deny a permit. Sections 39(c) and 39.2 have not delegated the Agency's authority in this area to the County Board. Ill. Rev. Stat., 1982 Supp., ch. 111½, pars. 1039(c), 1039.2.

This result does not leave the County Board without a remedy. The power to impose conditions under section 39.2(e) implies a power to enforce them. (Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1039.2(e).) The County Board can enforce its conditions in an action before the PCB as provided in sections 31(b) and 33(a). The broad language in those sections states that:

"Any person may file with the Board a complaint *** against any person allegedly violating this Act ***." (Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1031(b).)

also

"[T]he Board shall issue and enter such final order, or make such final determination, as it shall deem appropriate under the

circumstances." (Ill. Rev. Stat. 1981, ch. 111½, par. 1033(a).) Siting approval conditions are imposed by virtue of the authority of the Act. A violation of a condition properly imposed under this authority is a violation of the Act. The County Board then is left with the "private remedies" (Ill. Rev. Stat. 1981, ch. 111½, par. 1002(b)) afforded under these sections.

The County Board seeks review on two remaining conditions which were deleted or modified by the PCB: V and W. Each condition is addressed separately. In reviewing the PCB's determination of these conditions, the proper standard of review is the manifest weight of the evidence. Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1041; *Mathers v. Pollution Control Board* (1982), 107 Ill. App. 3d 729.

CONDITION V:

The condition essentially requires B.F.I. to pay the County Board's health department inspection costs on a yearly basis. The Board struck the condition because section 39.2 did not grant the County Board the power to impose fees.

Section 39.2 does not specifically grant the power to assess fees against an applicant. The County Board argues that such authority is implied by the authority to inspect. No finding was made that section 39.2 grants the County Board the authority to inspect in the instant case because B.F.I. agreed to inspections and the county health department has inspection authority already. Ill. Rev. Stat. 1981, ch. 111½, par. 20c13.

Regardless of a power to inspect, the imposition of a fee is not a reasonable and necessary condition in order to accomplish the purposes of section 39.2. (Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1039.2(e).) Any relationship these have toward carrying out the purposes of this section are too remote to come under the provision for conditions. If the legislature intended such a power, it could have been more specific. To extend section 39.2 to allow Condition V would go beyond the confines of the statute. The PCB's determination to strike "V" is upheld.

CONDITION W:

Condition W provides for proof of financial responsibility by B.F.I. The PCB struck "W" because the County Board cannot accomplish what the Agency is prohibited from doing. There was no support in the record for the amount and time period decided. Also, there were no standards to govern who would receive the money and execute the remedies.

■ The condition was properly struck for a number of reasons. Section 39.2 does not specifically grant the County Board the authority to require financial responsibility. Nor does it specifically prohibit the County Board from doing so. However, other considerations indicate that the authority cannot be implied.

Financial responsibility is not part of the six criteria to be considered in granting approval. It is only indirectly related to (v) but not sufficiently to find that it is implied. Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1039.2(a)(v).

The Agency is prohibited from requiring a bond or other security as a condition for a permit. (Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1039(a).) This provision indicates the legislative intent that bonds or other financial security are not allowed. The legislature has specifically provided an exception for RCRA permits in section 39(d). (Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1039(d).) Absent a clear intent to the contrary, no exception has been made for a county under section 39.2.

The time limitation imposed by the condition is arbitrary. There was no evidence to support a 20-year period. Testimony at the hearing indicated that B.F.I. would be responsible for the site up to three years after closure. B.F.I.'s brief presents a PCB regulation that requires B.F.I. to monitor the site for three years after closure. The County Board's argument that a 20-year period is reasonable and necessary in light of the problems associated with inactive landfills in other parts of Lake County is insufficient to allow the condition.

The amount of $3,000,000 is also arbitrary. The County Board argues that the amount does not have to be supported by the record because it is a common fact that landfill cleanup costs are high. Although this fact may be true, it does not support the amount imposed.

Overall, the County Board overstepped its authority in Condition W. The PCB's finding is affirmed.

In summary, the PCB's order concerning Conditions V, W and X are affirmed. Conditions C, E, H, I, K, N and O are remanded to the PCB for reconsideration.

The last issue raised by the County Board is whether its resolution amounts to a denial of siting approval if the conditions imposed are stricken. The County Board claims that it does. It admits that it did not make an express finding that B.F.I. did not satisfy all six criteria, but that is the effect of its decision. In the alternative then, the County Board asks that the cause be remanded to Lake County for a determination of whether the site will meet sections 39.2(a)(ii) and (v). Ill. Rev. Stat., 1982 Supp., ch. 111½, pars. 1039.2(a)(ii), (v).

We determine that we need not address this issue since the cause is being remanded in part.

Affirmed in part and remanded.

SEIDENFELD, P.J., and HOPF, J., concur.