E & E HAULING, INC., now known as American Environmental Construction Company, Plaintiff-Counterdefendant,

v.

FOREST PRESERVE DISTRICT OF DuPAGE COUNTY, ILLINOIS, Defendant-Counterplaintiff.

No. 85 C 6951.

United States District Court, N.D. Illinois, E.D.

Feb. 18, 1986.

Thomas W. McNamara, Michael J. Rovell, Robert D. Nachman, Jenner & Block, Chicago, Ill., for plaintiff-counterdefendant.

Richard A. Makarski, James P. O'Brien, Chapman & Cutler, Chicago, Ill., for defendant-counterplaintiff.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

E & E Hauling, Inc. ("E & E," though its pleadings reflect it is now known as American Environmental Construction Company) has filed a seven-count Complaint (the "Complaint") against the Forest Preserve District of DuPage County, Illinois ("District"), charging two of District's ordinances (the "Ordinances"):

1. impair the obligations of contracts between E & E and District, in violation of both U.S. Const. art. I, § 10, cl. 1 and Ill. Const. art. I, § 16 (Counts I and II);

2. are preempted by the Illinois Environmental Protection Act ("IEPA"), Ill.Rev.Stat. ch. 111½, ¶¶ 1001–1052 (Counts III and IV); and

3. are beyond the powers delegated to District by the Illinois General As-

sembly in Ill.Rev.Stat. ch. 96½, ¶¶ 6301–6345 (Counts V and VI).

E & E also charges District with breach of contract for its refusal to increase landfill user fees (Count VII).

District is obviously a believer in the adage that a good offense is the best defense. It has responded with an eight-count Counterclaim (the "Counterclaim") seeking multifaceted relief:

1. a declaratory judgment that the two Ordinances challenged by E & E are valid and enforceable (Counts I and II);

2. money damages for District's expenses incurred in monitoring a landfill site built by E & E (Count III);

3. indemnification for the amounts District has contributed to the environmental responsibility fund (Count IV);

4. a declaratory judgment that E & E may not operate its business from District's Mallard Lake landfill (Count V); and

5. a declaratory judgment that the contract between E & E and District is void (Counts VI–VIII).

E & E has now moved under Fed.R. Civ.P. ("Rule") 56 for summary judgment on Counts I through VI. For the reasons stated in this memorandum opinion and order, enough of that motion is granted to dispose of this entire action (both Complaint and Counterclaim).

### Facts [1]

On June 1, 1974 District and E & E entered into a contract (the "Agreement," Complaint Ex. A) for E & E's construction of a sanitary landfill at Mallard Lake Forest Preserve ("Mallard Lake"). Agreement § 8 [2] provided for an initial term of 10 years, with E & E then having successive two-year extension options (though the Agreement's total term, including extensions, could not exceed 19 years).

Agreement § 5.3.3 authorized E & E to collect user fees—based on the volume and density of material deposited at the landfill—from those who disposed of refuse at Mallard Lake. That section went on to provide:

The user fees will be competitive as compared with charges by other landfills in the northeastern Illinois area of a similar type of operation.

Agreement § 5.4.1.1 in turn obligated E & E to pay a percentage of those user fees to District:

1. during the first ten years of the Agreement, 10% of the user fees; and

2. during each two-year renewal period, an additional 1% of the user fees over the rate during the preceding period.

Since 1974 E & E and District have amended the agreement nine times (Complaint Ex. A). Those amendments primarily enabled E & E to raise the user fee rates. On April 2 and April 26, 1985 E & E once again asked District to raise those fees (P. Ex. F and G). On July 30, 1985 District adopted Ordinance No. 85–130 (P. Ex. I) granting the requested rate increases.

Neither the Agreement nor any amendment ever restricted the amount of refuse E & E could accept for deposit in the landfill. Then in 1978 District adopted an ordinance prohibiting the dumping of liquid and sewage sludge at Mallard Lake. E & E sued District. That litigation ended in a settlement agreement (the "Settlement," P.

---

1. Rule 56 principles impose on the party moving for summary judgment the burden of establishing the lack of a genuine issue of material fact. *Korf v. Ball State University,* 726 F.2d 1222, 1226 (7th Cir.1984). For that purpose this Court must view the evidence (including any reasonable inferences) in the light most favorable to the nonmovant—here District. *Hermes v. Hein,* 742 F.2d 350, 353 (7th Cir.1984).

2. Unfortunately the Agreement is not internally consistent in designating its provisions, referring sometimes to "section" and sometimes to "paragraph." This opinion will use the former term, which tracks with the Index to Contents (and probably with the most frequent internal usage).

Ex. D). Under the Settlement District adopted—with E & E's approval—Ordinance No. 0–667 (P. Ex. E) limiting the amount of liquid and sludge waste E & E could accept for deposit at Mallard Lake.

On July 30, 1985 District enacted the "Ordinances," further affecting E & E's operations at Mallard Lake:

1. Ordinance 85–131 (P. Ex. B) requires E & E to pay to District an additional 60% of the increase in user fee rates granted by simultaneously-enacted Ordinance 85–130. District intends to use the increased revenue generated under Ordinance 85–131 to fund post-closure environmental expenses of the landfill.

2. Ordinance 85–132 (P. Ex. C) limits the maximum volume of waste E & E may accept at Mallard Lake to 3.5 million gate yards of refuse per 12-month period. If a Mallard Lake landfill expansion is approved, Ordinance 85–132 permits the deposit of 5.7 million gate yards of waste per 12-month period. Ordinance 85–132 also requires E & E to give preference to waste generated in DuPage County and directs E & E to establish procedures to implement that preferential treatment.

### Statutory Preemption

Before this Court addresses the potential invalidity of the Ordinances on state-law grounds, reasonable jurisprudence requires consideration of possible inhibitions on such treatment. Nor does it matter that (as here) the litigants have not raised such issues: Whether the inhibitions grow out of concerns for federalism or are jurisdictional in nature, sua sponte review is appropriate.

■ Two possible curbs on federal actions suggest themselves, but each proves on brief examination to pose no limitation:

1. Abstention of either of the types spoken of in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814–16, 96 S.Ct. 1236, 1244–45, 47 L.Ed.2d 483 (1976) might be appropriate if the state-law slate were clean—if, to shift the metaphor, this Court had to explore uncharted state-law waters. But as this opinion will demonstrate, the Illinois Supreme Court's definitive decision in the later-discussed *Carlson* case provides controlling precedent.

2. If any of the state-law claims against District posed Eleventh Amendment problems, the mere added existence of a federal question (the Contracts Clause claim under Count I) would not permit this Court to treat with those state-law claims on a pendent jurisdiction theory. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 120–21, 104 S.Ct. 900, 918–19, 79 L.Ed.2d 67 (1984). But District, though an arm of local government, is not the "state" for Eleventh Amendment purposes. *See Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1979). District (See Ill. Rev.Stat. ch. 96½, ¶¶ 6301 and 6305) falls into the category of local governments unprotected by the Eleventh Amendment.

This opinion turns then to the question of preemption in the internal state-law sense (as contrasted with the more common sense of federal preemption of state action).

■ *Hutchcraft Van Service, Inc. v. City of Urbana Human Relations Commission,* 104 Ill.App.3d 817, 823, 60 Ill.Dec. 532, 536, 433 N.E.2d 329, 333 (4th Dist. 1982) states the Illinois doctrine of statutory preemption:

Preemption is a judicially created doctrine and is more commonly found in decisions grappling with the problem of a federal statute versus a state enactment. As applied to state action versus local action, preemption means that where the legislature has adopted a scheme for regulation of a given subject, local legislative control over such phases of the sub-

ject as are covered by state regulation ceases.

Under that principle, E & E correctly says, both the Illinois Constitution and IEPA vest the regulation of environmental matters exclusively with the General Assembly.

Ill. Const. art. XI, § 1 reads:

> The public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations. The General Assembly shall provide by law for the implementation and enforcement of this public policy.

IEPA ¶ 1002(a)[3] (emphasis added) similarly stresses the need for state-wide action in environmental protection matters:

> The General Assembly finds:
>
> (i) that environmental damage seriously endangers the public health and welfare, as more specifically described in later sections of this Act;
>
> (ii) that because environmental damage does not respect political boundaries, it is necessary to establish *a unified state-wide program* for environmental protection and to cooperate fully with other States and with the United States in protecting the environment;
>
> (iii) that air, water, and other resource pollution, public water supply, solid waste disposal, noise, and other environmental problems are closely interrelated and *must be dealt with as a unified whole* in order to safeguard the environment....

*Carlson v. Village of Worth*, 62 Ill.2d 406, 343 N.E.2d 493 (1975) relied on that section of IEPA to hold IEPA preempted local regulation of sanitary landfills by a non-home-rule unit (such as District).[4]

*Carlson's* ruling as to non-home-rule units has since been reaffirmed in such cases as *County of Cook v. John Sexton Contractors Co.*, 75 Ill.2d 494, 507, 27 Ill.Dec. 489, 492, 389 N.E.2d 553, 556 (1979) and *County of Kendall v. Avery Gravel Co.*, 101 Ill.2d 428, 434, 79 Ill.Dec. 169, 172–73, 463 N.E.2d 723, 726–27 (1984). E & E urges *Carlson* and its progeny control the outcome in this case.

E & E advances five contentions in support of its preemption assertion:

1. IEPA ¶ 1021.1(a) requires E & E to post a bond to insure post-closure care of landfill sites. E & E says the existence of that provision preempts District's attempt to collect additional post-closure funds in Ordinance 85–131.

2. Illinois Pollution Control Board ("Board") Rules 807.600–807.666 specify the procedures a landfill operator must follow to comply with IEPA ¶ 1021.1(a). E & E says those Rules prohibit District's attempt in Ordinance 85–131 to create another fund for the same post-closure needs.

3. Board Rule 318 (P. Mem. 15) imposes a maximum three-year post-closure obligation on E & E to monitor landfill problems. E & E argues that Rule precludes District's attempt in Ordinance 85–131 to collect funds for problems that may arise more than three years after closure.

4. IEPA sets no limit on the yearly amount of waste a landfill operator can accept. E & E says the absence of such a limit in the face of an otherwise comprehensive statutory and regulatory scheme prohibits a

---

**3.** For convenient reference, this opinion will cite to IEPA provisions in terms of the numbering in Chapter 111½ of the Illinois Revised Statutes, rather than to IEPA's internal numbering. Hence the citations use the "¶" sign (as does the official statutory compilation) rather than the "§" sign (as, for some unexplained reason, do bills enacted by the General Assembly).

**4.** One of the principal factors *Carlson, id.* 62 Ill.2d at 417–18, 343 N.E.2d at 499 stressed in reaching its preemption conclusion was the inclusion in an earlier draft of IEPA of an express reservation of concurrent authority in local governmental units to regulate pollution control matters—a reservation specifically deleted by the General Assembly in the course of enacting IEPA in its final form.

local limitation such as that established by Ordinance 85–132.

5. Ordinance 85–132's mandated preferential treatment for waste generated inside DuPage County endangers IEPA's policy of unified state-wide environmental control.

District counters those arguments with five of its own. None, however, withstands close scrutiny.

First, District urges IEPA ¶ 1002(b) preserves its right to enact the Ordinances:

(b) It is the purpose of this Act, as more specifically described in later sections, to establish a unified, state-wide program supplemented by private remedies, to restore, protect and enhance the quality of the environment, and to assure that adverse effects upon the environment are fully considered and borne by those who cause them.

District says the Ordinances are the "private remedies" envisioned by that section to supplement IEPA. But that simply represents an attempted end-run around the conclusion in *Carlson*, 62 Ill.2d at 408, 343 N.E.2d at 494 that IEPA ¶ 1002(a) preempts local regulation. Undoubtedly the "private remedies" referred to in IEPA ¶ 1002(b) are traditional tort remedies against landfill operators or owners arising out of the operation of waste landfills. Considering the Ordinances' legislative character, District's characterization of the Ordinances as "private remedies" is an impermissible distortion of the statutory language.

District's second contention is that its power to enact the Ordinances is preserved by IEPA ¶ 1002(a)(iv) (emphasis added):

The General Assembly finds ... that it is the obligation of the State Government ... *to encourage and assist local governments to adopt and implement environmental-protection programs consistent with this Act....*

But *Carlson*, 62 Ill.2d at 416–17, 343 N.E.2d at 499 deals with that very provision and forecloses reliance on its language:

By concentrating solely upon the italicized clause and disregarding its context, the city is able to perceive a legislative grant of "concurrent jurisdiction over environmental matters within the municipal boundaries of Chicago, with the State regulations setting the minimum permissible standards." This, in our opinion, is a misreading of the provision, which appears to relate to State assistance in the elimination of pollution problems stemming from the activities of the local governments themselves. In any event the clause is a part of a legislative finding as to the duties of the State. It is not a grant of authority to units of local government. And certainly there is in the italicized words no grant of power to local governments to impose requirements more stringent than those imposed by the State.

Next District argues that IEPA does not regulate post-closure funding of non-hazardous waste sites at all, so the Ordinances simply fill in a legislative gap. That position simply ignores the detailed scheme set up by IEPA and Board's Rules:

1. IEPA ¶ 1021.1(a) requires a landfill operator to post a performance bond or other security to cover (among other things) post-closure care of landfill sites.

2. Board Rules 807.501–807.666 establish a detailed procedure to estimate and fund post-closure costs.

Fourth, District would have it that IEPA ¶ 1039.2 reinstates District's power to control its sanitary landfills. That section transfers the responsibility for approving site locations from the Environmental Protection Agency to the local county board. District says IEPA ¶ 1039.2(e) authorizes District to condition its approval of a Mallard Lake expansion on E & E's acceptance of financial responsibility for post-closure expenses:

In granting approval for a site the county board or governing body of a municipality may impose such conditions as may be reasonable and necessary to accomplish the purposes of this Section and

as are not inconsistent with regulations promulgated by Board.

But *County of Lake v. Illinois Pollution Control Board,* 120 Ill.App.3d 89, 75 Ill. Dec. 750, 457 N.E.2d 1309 (2d Dist.1983) struck down two approval conditions conceptually similar to those imposed by Ordinance 85–131:

1. a condition requiring a landfill operator to pay the county's yearly inspection fees; and

2. a condition requiring a landfill operator to post a bond to fund cleanup of post-closure environmental damage for 20 years.

*County of Lake, id.* at 101–02, 75 Ill.Dec. at 110–11, 457 N.E.2d at 1317–18 concluded those approval conditions fell outside the authority of IEPA ¶ 1039.2(e):

Section 39.2[5] does not specifically grant the power to assess fees against an applicant. The County Board argues that such authority is implied by the authority to inspect. No finding was made that section 39.2 grants the County Board the authority to inspect in the instant case because [the landfill operator] agreed to inspections and the county health department has inspection authority already. Ill.Rev.Stat.1981, ch. 111½, par. 20c13.

Regardless of a power to inspect, the imposition of a fee is not a reasonable and necessary condition in order to accomplish the purposes of section 39.2.... Any relationship these have toward carrying out the purposes of this section are too remote to come under the provision for conditions. If the legislature intended such a power, it could have been more specific. To extend section 39.2 to allow [that condition] would go beyond the confines of the statute.

\*   \*   \*   \*   \*   \*

The [financial responsibility] condition was properly struck for a number of reasons. Section 39.2 does not specifically grant the County Board the authority to require financial responsibility. Nor does it specifically prohibit the County Board from doing so. However, other considerations indicate that the authority cannot be implied.

Financial responsibility is not part of the six criteria to be considered in granting approval. It is only indirectly related to [section 39.2(a)(v) ] but not sufficiently to find that it is implied.

\*   \*   \*   \*   \*   \*

The time limitation imposed by the condition is arbitrary. There was no evidence to support a 20-year period. Testimony at the hearing indicated the [landfill operator] would be responsible for the site up to three years after closure. [The landfill operator's] brief presents a PCB regulation that requires [the landfill operator] to monitor the site for three years after closure. The County Board's argument that a 20-year period is reasonable and necessary in light of the problems associated with inactive landfills in other parts of Lake County is insufficient to allow the condition....

\*   \*   \*   \*   \*   \*

Overall, the County Board overstepped its authority....

Plainly IEPA ¶ 1039.2(e) does not authorize District's Ordinances.[6]

Fifth and finally, District argues IEPA sets only "minimal standards," permitting District to establish more stringent requirements on its own. But the preemption doctrine teaches that the enactment of a comprehensive regulatory scheme indicates an intent to preclude local regulation entirely. *Hutchcraft Van Service,* 104 Ill. App.3d at 823, 60 Ill.Dec. at 536, 433 N.E.2d at 333. Rules 807.501 to 807.666—

---

**5.** [Footnote by this Court] As should be apparent, the *County of Lake* section references are to IEPA's internal numbering (see n. 3). Those numbers are exactly 1000 lower than the paragraph numbering in the statutory compilation.

**6.** This conclusion makes it unnecessary to consider E & E's added point that IEPA ¶ 1039.2(e)'s grant of limited authority to "the county board or governing body of a municipality" would not extend to District in any event.

promulgated to implement IEPA ¶ 1021.1(a) —appear to cover every conceivable aspect of planning and funding post-closure landfill care. Viewed against the backdrop of that comprehensive scheme, District's argument for a right to tighten the screws further must fail.

In sum, IEPA has preempted the field of sanitary landfill regulation, with a narrow exception (IEPA ¶ 1039.2) not relevant here. District's Ordinances impinges fatally on the preempted area and are therefore invalid.

### Other Claims

 Obviously the invalidity of the Ordinances on preemption grounds:

1. moots E & E's Contracts Clause claim under Count I [7] (and, incidentally, the like claim under the Illinois Constitution found in Complaint Count II and the other state-law challenges to the Ordinances found in Complaint Counts V and VI); and

2. carries with it the dismissal with prejudice of District's declaratory judgment claims asserted in Counterclaim Counts I and II.

Because the Complaint Count I claim was the only peg for federal jurisdiction, *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) counsels dismissal of E & E's pendent Count VII breach-of-contract claim and all the pendent claims in District's Counterclaim Counts III through VIII.

### Conclusion

There is no genuine issue of fact as to, and E & E is entitled to a judgment as a matter of law on, Complaint Counts III and IV. District's Ordinances are declared invalid on state-law preemption grounds. In addition:

1. Complaint Counts I, II, V and VI are dismissed as moot.

2. Counterclaim Counts I and II are dismissed with prejudice.

3. Complaint Count VII and Counterclaim Counts III through VIII are dismissed without prejudice.

---

7. Accordingly this Court has for sale—cheap—an erudite treatment of the Contracts Clause. Questions in that area are always a source of fascination to this Court (see, e.g., its opinions in *Morton Arboretum v. Thompson,* 605 F.Supp. 486 (N.D.Ill.1984) and *id.* at 493 (N.D.Ill.1985)).