CONCERNED BOONE CITIZENS, INC., *et al.*, Plaintiffs-Appellees, v. M.I.G. INVESTMENTS, INC., Defendant-Appellant (The County of Boone, Defendant-Appellee).—THE COUNTY OF BOONE, Third-Party Plaintiff-Appellee, v. M.I.G. INVESTMENTS, INC., Third-Party Defendant-Appellant.

Second District No. 2—85—0309

Opinion filed June 4, 1986.

Edward M. Maher, of Clark, McGreevy & Johnson, of Rockford, for appellant.

Gerald Grubb, State's Attorney, of Belvidere, Paul Perona, of Holmstrom & Green, of Peru, and Richard W. Cosby, of Chicago, for appellee County of Boone.

JUSTICE SCHNAKE delivered the opinion of the court:

This appeal presents the question of whether the County of Boone may assess a filing fee to cover its costs of holding a hearing to determine site location suitability of a new regional pollution control facility. For the reasons set forth herein, we find Boone County's filing fee ordinance invalid.

At 1:40 p.m. on February 6, 1985, Attorney Thomas Immel presented to the Boone County clerk's office an application for approval of a regional pollution control facility. An employee of that office, Pamela McCullough, informed Immel that the application could not

be filed without a $10,000 filing fee. When Immel became insistent, it was agreed that the clerk's office would take physical possession of the application and mark it "received 2-6-85, 1:40 P.M." Immel later received a letter from Dolores Weitemeyer, Boone County clerk, dated February 6, 1985, which stated that the application would not be considered to be filed until the $10,000 filing fee was received.

That filing fee was required under an ordinance of Boone County which assessed a fee at the rate of one cent per gallon of liquid waste and one cent per pound of solid waste proposed to be delivered to the site during the first five years of its operation. The minimum fee set by the ordinance was $10,000 and the maximum fee was $100,000. The fee was to be used solely to defray the costs incurred in reviewing the application, employing experts to evaluate the application, and holding a hearing on the application. Also, under the ordinance, any unused portion of the filing fee would be refunded to the applicant after the hearing and any appeal had been completed.

On March 12, 1985, two individuals, Robert Mickey and Joseph C. Poulter, along with the Concerned Boone Citizens, Inc., an Illinois not-for-profit corporation, (hereinafter collectively referred to as CBC) filed a complaint for declaratory judgment against M.I.G. Investments, Inc., an Illinois corporation (MIG) and the County of Boone (county), seeking a judicial determination that the Boone County filing fee ordinance was valid and that MIG's application had not been properly filed on February 6, 1985. CBC also filed a petition for preliminary injunction against the county to enjoin it from holding a hearing on MIG's application until the filing fee was received. On March 14, 1985, the county filed a third-party declaratory judgment action against MIG also seeking a judicial determination that its filing fee ordinance was valid. MIG thereafter filed a motion to dismiss CBC's complaint for declaratory relief, CBC's motion for preliminary injunction, and the county's third-party complaint for declaratory relief.

A hearing on CBC's petition for a preliminary injunction was held on March 25 and 26, 1985. On Friday, March 29, 1985, the trial court entered a temporary restraining order prohibiting the county from taking any action on MIG's application and tolling any statutory time period for the holding of a hearing on the application. The court's TRO also stated in part:

"3. That this Court has not had sufficient time to render its decision but because of certain time constraints on the part of

the siting statute feels it is just and reasonable to enter this Order.

4. That the entry of this order is for the sole purpose of allowing the Court to render a fair and equitable decision on the Motion for Preliminary Injunction; that the entry of this Order is not a decision on the merits of the Motion for Preliminary Injunction in any manner."

The following Monday, April 1, 1985, MIG filed a petition to dissolve the TRO. On April 4, 1985, at the hearing on MIG's petition to dissolve, the trial court declined to rule on the petition and ruled instead on the merits of the case. The court denied CBC's petition for preliminary injunction and dismissed its complaint for lack of standing. The court then ruled in the county's favor on its third-party complaint, finding that the filing fee ordinance was valid and that MIG's application had not been properly filed on February 6, 1985. The court also specifically stated in response to questions by counsel that the TRO was not dissolved at that time, but would be dissolved only when the final judgment was signed because at that point the TRO would no longer be needed. The court's judgment was entered on April 15, 1985, and this appeal followed.

I

The first issue raised is whether a justiciable controversy exists between the county and MIG. On March 26, 1986, CBC filed a motion to dismiss this appeal for lack of jurisdiction. CBC argued that this court lacked jurisdiction to determine the validity of the filing fee ordinance because MIG's site approval application did not meet the notice requirements of section 39.2(b) of the Environmental Protection Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(b)). Attached to CBC's motion was a certificate of publication showing that MIG published notice of its application on January 24, 1985, 13 days before it filed its application. We ordered the motion, together with MIG's response upon filing, to be taken with the case. MIG filed its response on April 11, 1986.

■■ ■ We note initially that CBC was dismissed from this action by the trial court for lack of standing and has not appealed that ruling. CBC is a proper party on appeal only to respond to MIG's request for damages for the wrongful issuance of a temporary restraining order. Further, CBC did not raise this jurisdictional issue below, and the certificate of publication it now relies on is not part of the record on appeal. Despite these facts, we find that we can decide the issue of our jurisdiction and may properly consider the

certificate of publication in doing so. An objection to jurisdiction may be imposed at any time, even by the appellate court on its own motion. (*Kozsdiy v. O'Fallon Board of Fire & Police Commissioners* (1975), 31 Ill. App. 3d 173, 175.) Further, since the existence of a real controversy is an essential requisite to appellate jurisdiction, the court may allow facts affecting its right and duty to proceed in the exercise of appellate jurisdiction, not of record, to be proven by extrinsic evidence. *People v. Lynn* (1984), 102 Ill. 2d 267, 272; *La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 379.

Section 39.2(b) states in relevant part:

> "No later than 14 days prior to a request for location approval the applicant shall cause written notice of such request to be served *** on the owners of all property within 250 feet ***.

> Such written notice shall also be *** published in a newspaper of general circulation published in the county in which the site is located. (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(b).)

In *Kane County Defenders, Inc. v. Pollution Control Board* (1985), 139 Ill. App. 3d 588, this court held that the 14-day limitation which applied to the written notice also applied to the notice by publication. This court further stated that these notice requirements were "jurisdictional prerequisites which must be followed in order to vest the county board with the power to hear a landfill proposal." (139 Ill. App. 3d 588, 593.) Because MIG filed its application 13 days after it published notice of its application, MIG's application is defective, and the county board lacks jurisdiction to act on it.

■ It does not necessarily follow, however, that because the county board lacks jurisdiction to act on MIG's application, this court also lacks jurisdiction. This appeal does not arise from any proceeding before the county board, but rather from a declaratory judgment proceeding in the circuit court. The correct issue, therefore, is not whether the county board has jurisdiction over MIG's site location application, but whether there is an "actual controversy" (Ill. Rev. Stat. 1983, ch. 110, par. 2—701) over the validity of the filing fee ordinance so that this court has jurisdiction to review the circuit court's declaratory judgment.

■■ ■ In order that there be an *actual controversy* as to the validity of an ordinance, the party attacking it must show that it has sustained or is immediately in danger of sustaining some injury as a result of its enforcement. The fact that an ordinance may be applicable to the rights or interests of a person at some future time does not give such person standing to challenge the validity of the ordi-

nance. (*Berg v. City of Chicago* (1968), 97 Ill. App. 2d 410.) Stated somewhat differently, to establish a right to declaratory judgment as to the validity of an ordinance, the party must plead and prove facts showing a protectable interest clearly falling within the operative language of the ordinance and that he will be adversely affected by its enforcement. *Eagle Books, Inc. v. City of Rockford* (1978), 66 Ill. App. 3d 1038, 1040; *Clevenger v. City of East Moline* (1976), 44 Ill. App. 3d 168, 171.

While MIG's present application to the county board is defective for having been prematurely filed, this defect can be easily corrected by refiling. In light of the history and circumstances of this case, there can be little doubt that MIG will refile its application. We find, therefore, MIG is in immediate danger of sustaining some injury as a result of the enforcement of the ordinance and that the facts show that MIG has a protectable interest clearly falling within the operable language of the ordinance which will be adversely affected by its enforcement. To dismiss this appeal as CBC requests, only to have MIG refile its application and have this action refiled by one of the parties, would cause needless delay in resolving this dispute.

## II

The second issue raised is the validity of the Boone County filing fee ordinance. The county argues that it would be unfair to require it to bear the costs of reviewing the site location suitability of a new pollution control facility and, therefore, its authority to assess a filing fee can be reasonably implied into section 39.2. MIG contends, however, that under *County of Lake v. Pollution Control Board* (1983), 120 Ill. App. 3d 89, the authority to assess a filing fee cannot be implied into section 39.2.

The Environmental Protection Act (Act) (Ill. Rev. Stat. 1985, ch. 111½, par. 1001 *et seq.*) was intended by the legislature to "establish a unified, statewide program supplemented by private remedies, to restore, protect and enhance the quality of the environment." (Ill. Rev. Stat. 1985, ch. 111½, par. 1002(b).) A unified statewide program was necessary because "environmental damage does not respect political boundaries." (Ill. Rev. Stat. 1985, ch. 111½, par. 1002(a)(ii).) It is well established that the Act operates to exclude non-home-rule units such as Boone County from the regulation of pollution control facilities. (*County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494; *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406; *O'Connor v. City of Rockford* (1972), 52 Ill. 2d 360.) Under the Act, a non-home-rule unit's sole power to regulate a

new pollution control facility is found in section 39.2, which allows local authorities to approve site location suitability in accordance with the six criteria there stated. Therefore, if Boone County has the authority to establish its filing fee, the authority for such a fee must be found in section 39.2(a).

In *County of Lake*, Browning-Ferris Industries (B.F.I.) petitioned for site approval for an expansion of a solid waste disposal site. The county board granted approval subject to 25 conditions, one of which was a payment of a $1,000 annual fee to the county health department to offset the costs of its inspection program. The Pollution Control Board struck that condition for the reason that section 39.2 did not grant a county board the power to impose fees. On appeal, this court affirmed, stating:

"Section 39.2 does not specifically grant the power to assess fees against an applicant. The County Board argues that such authority is implied by the authority to inspect. No finding was made that section 39.2 grants the County Board the authority to inspect in the instant case because B.F.I. agreed to inspections and the county health department has inspection authority already. Ill. Rev. Stat. 1981, ch. 111½, par. 20c13.

Regardless of a power to inspect, the imposition of a fee is not a reasonable and necessary condition in order to accomplish the purposes of section 39.2. (Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1039.2(e).) Any relationship these have toward carrying out the purposes of this section are too remote to come under the provision for conditions. If the legislature intended such a power, it could have been more specific." *County of Lake v. Pollution Control Board* (1983), 120 Ill. App. 3d 89, 101.

■ We find the county's attempts to distinguish *County of Lake* unpersuasive. Nothing in this court's opinion in that case implies: (1) that the applicant's lack of notice that such a fee might be assessed, or (2) that the fee was imposed after the hearing as a condition of approval rather than before the hearing, was in any relevant to the decision. Further, *County of Lake* cannot be distinguished on the basis that section 39.2 does not give a county the right to inspect the facility while it does give a county the right to approve the facility's location. The court did not there decide whether a county has a right to inspect under section 39.2, because B.F.I. had agreed to the inspections and the county health department had a right to inspect under section 14 of "An Act in relation to the establishment and maintenance of county and multiple-county public health depart-

ments" (Ill. Rev. Stat. 1981, ch. 111½, par. 20c13). Rather, the court held that "[r]egardless of a power to inspect," an inspection fee was not authorized by the statute. (*County of Lake v. Pollution Control Board* (1983), 120 Ill. App. 3d 89, 101.) We, therefore, find *County of Lake* to be controlling here and hold that section 39.2 does not give Boone County the authority to assess a filing fee.

### III

■ Having found the filing fee ordinance invalid, we next address the question of whether the county is deemed to have granted site location approval by its failure to act on MIG's application within 120 days. The applicable statute, sections 39.2(d) and (e), state in part:

> "(d) At least one public hearing is to be held by the county board or governing body of the municipality within 60 days of receipt of the request for site approval, * * *.
>
> (e) * * * If there is no final action by the county board or governing body of the municipality within 120 days after the filing of the request for site approval the applicant may deem the request approved." Ill. Rev. Stat. 1983, ch. 111½, pars. 1039.2(d), (e).

In their briefs, the county and MIG dispute whether the trial court's TRO and subsequent judgment tolled the running of the 60- and 120-day limitation periods. We find, however, that we need not decide this issue, for MIG's application was defective and will have to be refiled.

### IV

MIG's last argument is that the TRO was wrongfully issued and that under section 11—110 of the Code of Civil Procedure this cause should be remanded for an assessment of damages against CBC. Section 11—110 states in part:

> "In all cases where a temporary restraining order or a preliminary injunction is dissolved by the circuit court or by the reviewing court, the circuit court, after the dissolution of the temporary restraining order or preliminary injunction, and before finally disposing of the action shall, upon the party claiming damages by reason of such temporary restraining order or preliminary injunction, filing a petition under oath setting forth the nature and amount of damages suffered, determine and enter judgment in favor of the party who was injured by such temporary restraining order or preliminary injunction for

the damages which the party suffered as a result thereof, which judgment may be enforced as other judgments for the payment of money. However, a failure so to assess damages as hereinabove set out shall not operate as a bar to an action upon the injunction bond." Ill. Rev. Stat. 1985, ch. 110, par. 11—110.

In *Schien v. City of Virden* (1955), 5 Ill. 2d 494, the court explained the operation of the statute, stating:

"Prior to the enactment of this statute damages for the wrongful issuance of a temporary injunction were recoverable by a legal action on the bond. [Citation.] The purpose of the statute was to provide a summary mode of assessing damages for the *wrongful* issuance of a *temporary* injunction upon its *dissolution before final judgment*. The statute applies only to temporary injunctions [citation], the temporary injunction must have been wrongfully issued [citations], and it must be dissolved before the cause is heard on the merits for final judgment. [Citations.] To understandingly interpret and apply this statute it must be kept in mind that in a suit for a permanent injunction, if a temporary injunction issued prior to the determination on the merits, separate and distinct issues are involved. The issues as to issuance of the temporary injunction are not dependent upon the determination on the merits. A temporary injunction may be wrongfully issued although plaintiff prevails in his suit for a permanent injunction [,] [citation], and the temporary injunction may rightfully issue although plaintiff does not sustain his suit on the merits. [Citation.] Damages claimed under this statute are therefore based on the wrongful issuance of the temporary injunction, and cannot be assessed until there has been a legal determination that the temporary injunction was wrongfully issued. This is attained by the dissolution of the temporary injunction before the determination on the merits.

\* \* \*

This statute, providing an unusual and summary remedy, should be strictly construed and applied. [Citation.] The language of the statute is clear and unambiguous. It clearly applies only where the injunction 'is dissolved' and 'before finally disposing of the suit.' " (Emphasis in original.) *Schien v. City of Virden* (1955), 5 Ill. 2d 494, 502-04.

■ In the present case, the TRO was not dissolved before the suit was disposed of. At the hearing on MIG's petition to dissolve

the TRO, the trial court declined to rule on the petition and ruled instead on the merits of the case. The trial court specifically stated that the TRO was not dissolved at that time, but would be dissolved only when he signed the judgment dismissing CBC's complaint because at that time there would be no need for it. MIG's argument that it is "fairly clear" that the TRO was wrongfully issued because CBC's complaint was later dismissed for lack of standing misconstrues section 11–110. Under *Virden,* summary recovery under 11–110 is not permitted unless the TRO is dissolved before the suit is disposed of. Since that did not occur in this case, MIG's claim of damages under section 11–110 must fail.

 MIG also argues in its reply brief that this court should consider the trial court's failure to decide its petition to dissolve the TRO as a denial of the petition and reverse that denial. While we agree that the denial of a petition to dissolve a TRO may be appealed under Supreme Court Rule 307(a)(1) (87 Ill. 2d R. 307(a)(1)), and that such an appeal preserves the issue of damages under section 11–110 if the denial of the petition is reversed (*Panduit Corp. v. All States Plastic Manufacturing Co.* (1980), 84 Ill. App. 3d 1144), we find MIG has waived this issue on appeal by failing to address it in its brief. MIG's argument that this court should find that the TRO was wrongfully issued for one of the 11 reasons set out in its original petition to dissolve the TRO, is a different and distinct issue from that asserted in its brief. There it is argued that the trial court's finding on lack of standing showed that the TRO was wrongfully issued. MIG's reply argument, therefore, is waived under Supreme Court Rule 341(e)(7) (87 Ill. 2d R. 341(e)(7)) because of its failure to include it in its brief.

For the reasons stated herein, the judgment of the circuit court of Boone County is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

UNVERZAGT and HOPF, JJ., concur.